Justice LaVECCHIA
delivered the opinion of the Court.
After a two-member panel of the Parole Board denied parole to petitioner Sundiata Acoli, a convicted murderer who twice before had been denied parole, Acoli filed an internal administrative appeal. That administrative appeal entitled him to a review by the full Parole Board of the record that had been developed before the Board panel, as well as any additional material submitted by Acoli. Because he had not been recommended for parole, the full Board did not conduct an in-person assessment of Acoli consistent with its regulations governing the parole process. The Parole Board affirmed the denial of parole and the extended future parole eligibility date established for Acoli.
*217 Acoli appealed to the Appellate Division, and, in an unpublished opinion, the appellate panel reversed the Parole Board. The Appellate Division determined that, based on the administrative record developed, the Parole Board’s affirmance of the denial of parole was arbitrary and capricious. The appellate panel ordered the Parole Board to “expeditiously set conditions for parole.”
We granted the Parole Board’s petition for certification, which argues only that it was error, under the statutory process governing parole, for the Appellate Division to have proceeded directly to ordering Acoli’s parole. Construction of the statutes governing the parole process leads us to conclude that the Appellate Division acted prematurely in ordering Aeoli’s parole release.
As we perceive the legislative intent expressed through the parole statute, the administrative scheme for parole envisioned that a convicted murderer would undergo a full hearing before the Parole Board prior to securing release from incarceration. Submitting the decision of a two-member panel’s denial of parole to a truncated Board review of a murder inmate’s alleged errors does not substitute for the full Board in-person review and hearing of a convicted murderer prior to his or her parole release. Accordingly, we hold that the appropriate remedy in Aeoli’s circumstances is a remand to the full Parole Board for completion of the administrative parole process. That process in its totality requires a full hearing before the Parole Board on his suitability for parole release and shall permit the victims of Acoli’s criminal acts to be heard, if they wish, by the Board prior to a decision on his parole. We reverse and remand for proceedings consistent with this opinion.
I.
We begin with a summary of the relevant facts and the procedural path that this appeal has taken. Foremost, the procedural history sets the stage for the statutory construction issue at the heart of this appeal.
*218 Stemming from his involvement in the 1973 roadside murder of State Trooper Werner Foerster and assault of Trooper James Harper along the New Jersey Turnpike, Acoli was convicted in 1974 of murder; atrocious assault and battery; assault and battery; assault with an offensive weapon; assault with intent to kill; illegal possession of a weapon; and armed robbery. Under the sentencing provisions in place at the time, the trial court sentenced Acoli to a life term for the murder conviction and consecutive sentences of ten to twelve years of imprisonment for his conviction for assault with intent to kill; two to three years of imprisonment for illegal possession of a weapon; and twelve to fifteen years of imprisonment for armed robbery. Taken together, he received an aggregate sentence of life plus twenty-four to thirty years.
In 2010, at the age of seventy-three, and after serving almost thirty-seven years of his sentence, Acoli became eligible for parole for the third time.[1] A parole hearing officer performed an initial review of Acoli’s file, and the case was referred to a Parole Board panel for a hearing. After interviewing Acoli at length, the two-member Board panel determined that “a substantial likelihood exists that [Acoli] would commit a new crime if released on parole at this time.” Because of that determination, the two-member panel transferred the case to a three-member Board panel to establish a future eligibility term — that is, when Acoli could reapply for parole — under administrative guidelines. The three-member panel set a future eligibility term of 120 months.
Following the administrative process for review, Acoli filed an appeal with the full Parole Board. The full Board conducted a review based on the record as developed before the panels, commonly known as a paper hearing. In that review, the Parole Board considered the record developed by the hearing officer and the two- and three-member panels, but the Board did not hear testimony itself or otherwise create its own record. With that as *219 the record before it, the fall Board (minus the Board members who had participated in earlier panel decisions) approved the denial of parole to Acoli and the establishment of a 120-month future eligibility term. The Board’s findings were set forth in a nine-page written decision that essentially adopted the Board panels’ determinations.
The Parole Board identified its decision as a final agency decision for the purposes of appellate review. See R. 2:2-3(a)(2). Acoli appealed, and the Appellate Division reversed. The Appellate Division concluded that the Board’s basis for denying Acoli parole constituted arbitrary and capricious action, and the panel ordered that the Parole Board “expeditiously set conditions for [Acoli’s] parole.”
The Board filed a motion for reconsideration. It asked the panel to reassess its remedy and, further, requested a stay pending reconsideration. The Board argued that, rather than ordering parole, the Appellate Division should have remanded the ease to the Parole Board for a full hearing. According to the Board, that result was compelled by N.J.S.A. 30:4 — 123.55(f), which required that the full fifteen-member Parole Board conduct a hearing before paroling an inmate who has been convicted of murder.
Concluding that the Board misconstrued N.J.S.A. 30:4-123.55(f), the Appellate Division denied the motion for reconsideration in a written order. According to the appellate panel, N.J.S.A. 30:4-123.55(f) is triggered only when a two-member Board panel recommends parole. Viewing that subsection to be designed as a curb on a rogue two-member panel that might improperly release a convicted murderer, the appellate panel dismissed the subsection as inapplicable to Acoli’s circumstances. To the appellate panel, nothing in N.J.S.A. 30:4-123.55(f) mandated a plenary hearing before the full Parole Board “if the inmate was not certified for parole by an assigned member or the board panel prior to the Board considering an appeal from a denial of parole.” According *220 ly, the appellate panel saw no reason to disturb its prior decision and dismissed as moot the Board’s stay application.
The Parole Board filed a motion for a stay before this Court, pending this Court’s determination on its petition for certification. We granted the stay and the Board’s petition for certification. Acoli v. N.J. State Parole Bd., 221 N.J. 220, 110 A.3d 933 (2015). We also granted amicus curiae status to the American Civil Liberties Union of New Jersey (ACLU-NJ).
II.
A.
The Board maintains that the Legislature directed that before an inmate serving a sentence for murder can be paroled, the full Board must certify parole, by a majority vote, after a hearing. That legislative aim, the Board says, was thwarted by the Appellate Division’s narrow construction of N.J.S.A. 30:4 — 123.55(f), which would require a full Board hearing only when the two-member panel recommends parole. Accordingly, the Board asks this Court to remand to the Board for a full hearing.
The Board emphasizes the distinctions between the administrative paper appeal (the type of appeal that occurred here) and the full evidentiary hearing. To the Board, the two proceedings are not interchangeable. The full hearing provides each Board member with the chance to question the inmate and hear his or her responses, using those responses as aids in assessing whether the inmate is likely to commit a crime if released. However, the administrative appeal is simply a paper review of the record before the Board panel, its decision, and the inmate’s objections to it.
Last, the Board argues that the Appellate Division deprived the victims of their right to appear before the fifteen-member Board. Although the victims may have had a chance to appear before the two-member panel, the Board contends that the Legislature specifically granted victims the right to provide input before the full *221 Board, guiding its parole consideration of an incarcerated convicted murderer.
B.
Focusing on the plain language of N.J.S.A. 30:4 — 123.55(f), Acoli argues that the subsection applies only when a two-member Board panel recommends parole for an incarcerated convicted murderer. According to Acoli, the Appellate Division correctly determined that N.J.S.A. 30:4 — 123.55(f) did not apply in his circumstances. Acoli contends that the Legislature’s purpose undergirding that provision is to prevent a two-member Board panel, acting alone, from paroling an inmate serving a sentence for murder. He urges this Court to find no ambiguity in the statute and maintains that to grant the Board’s requested relief would attribute to N.J.S.A 30:4 — 123.55(f) an intent that runs contrary to its plain language.
The ACLU-NJ makes a similar argument, maintaining that the plain language of N.J.S.A. 30:4-123.55© renders it inapplicable here. The ACLU-NJ divides the roads ordinarily taken for parole release into three general categories: (1) the Board panel could certify parole, triggering an inmate’s release; (2) if the Board panel denies parole, the inmate can appeal that denial to the full Board, which could then certify release; and (3) an appellate court could find the Board’s denial so arbitrary that the court intervenes and grants parole. The ACLU-NJ explains that N.J.S.A. 30:4-123.55© cuts off the first path — a Board panel certifying parole — ■ for inmates convicted of murder. However, the ACLU-NJ asserts that the subsection left untouched the second and third routes to parole.
Emphasizing the words of N.J.S.A. 30:4-123.55©, the ACLU-NJ states that the subsection applies only when a Board panel recommends a murder inmate for parole. Because the Board panel here denied Acoli’s parole request, the ACLU-NJ argues that the subsection is plainly inapplicable and urges affirmance of the Appellate Division judgment.
*222 III.
We begin with the structure of the Parole Board and the parole process. The State Parole Board is composed of a chair, fourteen associate members, and three alternate members. N.J.S.A. 30:4r-123.47(a). Appointed by the Governor with the advice and consent of the Senate, those members are appointed to bring expertise in “law, sociology, criminal justice, juvenile justice or related branches of the social sciences.” Ibid.
Like other administrative agencies that employ specialized knowledge to administer a regulatory scheme, the Parole Board is the “agency charged with the responsibility of deciding whether an inmate satisfies the criteria for parole release under the Parole Act of 1979.” In re Application of Hawley, 98 N.J. 108, 112, 484 A.2d 684 (1984). Drawing on the diverse backgrounds of its members, the Parole Board makes “highly predictive and individualized discretionary appraisals.” Beckworth v. N.J. State Parole Bd., 62 N.J. 348, 359, 301 A.2d 727 (1973).
Those appraisals must realistically be recognized to be inherently imprecise, as they are based on “discretionary assessment[s] of a multiplicity of imponderables, entailing primarily what a man is and what he may become rather than simply what he has done.” Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 10, 99 S.Ct. 2100, 2105, 60 L.Ed.2d 668, 677 (1979) (quoting Sanford H. Kadish, The Advocate and the Expert — Counsel in the Peno-Correctional Process, 45 Minn. L. Rev. 803, 813 (1961)); see also Trantino v. N.J. State Parole Bd., 166 N.J. 113, 201, 764 A.2d 940 (2001) (Baime, J.A.D., dissenting) (“Stripped to its essentials, a parole board’s decision concerns a prediction as to an inmate’s future behavior, a prognostication necessarily fraught with subjectivity.”). But that imprecision does not allow parole determinations to escape judicial scrutiny. Judicial review of the Parole Board’s decisions is guided by the arbitrary and capricious standard that constrains other adminis *223 trative action. See Hawley, supra, 98 N.J. at 112-13, 484 A.2d 684.
It is settled law that the parole of an inmate may come about through appellate review of the parole process when that process has been completed and the Board has been shown to have acted arbitrarily in denying parole. In Trantino, supra, this Court confronted the Parole Board’s argument that “the actual granting or withholding of parole is a function reposing exclusively in the Parole Board, and there is no such thing as judicial parole.” 166 N.J. at 173, 764 A.2d 940 (internal quotation marks omitted). Although the Parole Board rarely acts so far outside of its discretion as to invite judicial intervention, we recognized in Trantino that the power to reverse the agency and order that parole be granted “may be encompassed within the province of judicial review.” Ibid.
That said, the Parole Act and its implementing regulations set forth the process that normally governs parole determinations. See N.J.S.A. 30:4-123.45 to -123.69; N.J.AC. 10A:71-3.1 to -4.3.
For most crimes, as an inmate’s parole eligibility date approaches, correctional personnel prepare a pre-parole report that is filed with a Parole Board panel. N.J.SA 30:4-123.54(a). Then a “designated hearing officer” reviews that report, along with other supporting documentation, and determines “whether there is a basis for denial of parole” or whether “additional information providing a basis for denial of parole would be developed or produced at a hearing.” N.J.S.A. 30:4-123.55(a).
If the hearing officer finds no basis to deny parole and no need to develop more information at a hearing, he or she then submits a written recommendation “to the assigned member of the [Bjoard panel that parole release be granted.” Ibid. If the Board panel member concurs, parole is certified. N.J.S.A. 30:4-123.55(b).
But if the hearing officer “determines that there is a basis for denial of parole, or that a hearing is otherwise necessary,” the case must be referred to a panel of the Board for a hearing. *224 N.J.S.A 30:4-123.55(c). The hearing is informal. Ibid. The Board panel can receive “as evidence any relevant and reliable documents or videotaped or in person testimony, including that of the victim of the crime or the members of the family of a murder victim if the victim or a family member so desires.” Ibid. After the hearing, which also can be ordered if a panel member disagrees with the hearing officer’s recommendation, see N.J AC. 10A:71-3.16(d), the Board panel can either “(1) certify the parole release of the inmate” or “(2) deny parole and file ... a statement setting forth the decision,” N.J.S.A. 30:4-123.55(d).
If the Board panel denies parole, the inmate may appeal in writing that denial decision to the full Parole Board. N.J.S.A. 30:4-123.58(a); N.J.A.C. 10A:71-4.2(a). Under that procedure, in contrast to the process when the panel recommends parole of a convicted murderer, an in-person review of the inmate by the full Board is not part of the structure of this review. Cf. N.J AC. 10A:71-3.19(c) (setting procedure to ensure murder inmate’s presence at full Board review when two-member panel recommends parole of murder inmate under N.J.A.C. 10A:71-3.18(e)). In the review of a denial of parole, the full fifteen-member Board, minus the Board panel members that participated in the hearing, decides the appeal. N.J.S.A. 30:4-123.58(a). The Parole Board may affirm, modify, or reverse the Board panel’s decision, or it can remand for further findings. N.J AC. 10A:71^4.2(f).
Importantly, the Parole Act creates an alternative parole track for inmates convicted of murder. For inmates serving a term for murder and other serious offenses, a hearing officer cannot recommend parole; the individual hearing officer must refer the case to a Board panel for a hearing. N.J AC. 10A:71-3.15(b). In the ease of an inmate convicted of murder, even after the hearing, the panel is without authority to certify parole; it can only recommend parole. N.J.A.C. 10A:71-3.18(c). When a Board panel recommends parole, referral to the full Board is automatic. Ibid. Parole cannot be certified “until a majority of the full parole board, after *225 conducting a hearing, concurs in that recommendation.” N.J.S.A. 30:4 — 123.55(f).
That alternate track grew out of 1989 and 1993 amendments to the Parole Act. Reflecting those amendments, N.J.S.A. 30:4-123.55(f) currently provides:
Notwithstanding the provision of any other law to the contrary, if an inmate incarcerated for murder is recommended for parole by the assigned board member or the appropriate board panel, parole shall not be certified until a majority of the full parole board, after conducting a hearing, concurs in that recommendation. The board shall notify the victim’s family of that hearing and family members shall be afforded the opportunity to testify in person or to submit written or videotaped statements.
The first sentence of the subsection, addressing the parole process for murder inmates, was enacted in 1989, see L. 1989, c. 115, § 1, and the second sentence on victim rights came in 1993, see L. 1993, c. 222, § 1.
In a statement issued when it considered the 1989 amendment, the Senate Judiciary Committee detailed the parole process and the effect that the 1989 amendment would have:
Under present procedures, whenever any inmate nears his parole eligibility date, a hearing officer is assigned to review that inmate’s record. If the hearing officer detennines that no basis for denial of parole exists, he recommends to the parole board member assigned to that case that the inmate be released. If the board member concurs in that recommendation, parole is certified.
If the hearing officer does not recommend parole or if the assigned board member does not certify a parole recommendation, a parole hearing is held by the appropriate board panel. After that hearing, the board panel either certifies or denies parole.
Under this bill, whenever an inmate incarcerated for murder is recommended for parole, parole shall not be certified until a majority of the full parole board, after conducting a hearing, concurs in that recommendation.
[Senate Judiciary Committee, Statement to Assembly No. Z77% (1989).]
That amendment was signed into law in June 1989 by Governor Thomas H. Kean.
The Legislature amended the statute yet again in 1993 to address the hearing conducted by the full Board when considering the release of a convicted murderer, adding the following language: “The board shall notify the victim’s family of that hearing and family members shall be afforded the opportunity to testify in *226 person or to submit written statements.” L. 1993, c. 222, § 1. The Sponsor’s Statement accompanying the legislation explained:
Under present law, the full Parole Board is required to hold a hearing prior to certifying the parole of an inmate incarcerated for murder. This bill would permit the family of the murder victim to testify in person or submit written documents at that hearing.
[Sponsor’s Statement to S. No. 1W (1992).]
With that background to the parole process in mind, we turn to the matter before us.
IV.
In the performance of administrative law actions and determinations, process matters. An administrative agency exercises its delegated authority and applies its intended expertise pursuant to the Legislature’s enabling act that frames the performance of the agency’s assigned tasks. The prescribed process includes “the means by which the Legislature expects the agency to act.” See 37 New Jersey Practice, Administrative Law and Practice § 1.6, at 10 (Steven L. Lefelt et al.) (2d ed.2000). The parole scheme operates within that general construct.
The decision to grant or deny parole has been granted to a legislatively created administrative body comprised of persons having a combined background deemed suitable by the Legislature to make exceedingly difficult predictive pronouncements about an individual’s likelihood to reoffend. See N.J.S.A. 30:4-123.47(a). The process created by the Legislature for that body to follow is one that reflects the trust reposed in the body of individuals selected to serve as the decision makers for an agency cast with responsibility and authority to make difficult predictive determinations. See Hawley, supra, 98 N.J. at 112, 484 A.2d 684 (stating that, under Parole Act of 1979, Parole Board is tasked with serious responsibility of determining “whether an inmate satisfies the criteria for parole release”); Beckworth, supra, 62 N.J. at 359, 301 A.2d 727 (noting that Board is expected to draw *227 from members’ diverse backgrounds when making “highly predictive and individualized discretionary appraisals”).
Here, the administrative process calls for stepped decision making. In this instance, we are called on to discern how that administrative process was intended to work, inclusive of judicial review, in the context of a sequence of events not faced before by this Court under the present statutory configuration.[2] Our task here, as in every matter involving statutory construction, is the same: “to divine and effectuate the Legislature’s intent.” Perez v. Zagami, 218 N.J. 202, 209, 94 A.3d 869 (2014) (quoting State v. Buckley, 216 N.J. 249, 263, 78 A.3d 958 (2013)).
The best evidence of that intent is the plain language of the statute, which thus serves as the starting point for statutory review. Id. at 209-10, 94 A.3d 869. However, if there is ambiguity lurking in the statute’s plain language such that its application in particular circumstances “is not clear” or “is susceptible to more than one plausible meaning,” the Court may look beyond the statutory text to extrinsic sources to aid in understanding the Legislature’s will. State v. Olivero, 221 N.J. 632, 639, 115 A.3d 1270 (2015) (internal quotation marks omitted).
Our focus is drawn then, as it must be, to the legislative amendments that created the current provision codified as N.J.S.A. 30:4-123.55(f), which deserves repeating in full:
Notwithstanding the provision of any other law to the contrary, if an inmate incarcerated for murder is recommended for parole by the assigned board member or the appropriate board panel, parole shall not be certified until a majority of the full parole board, after conducting a hearing, concurs in that recommendation. The board shall notify the victim’s family of that hearing and family members shall be afforded the opportunity to testify in person or to submit written or videotaped statements.
*228 Although that subsection clearly and expressly prevented the parole of a convicted murderer by the sole action of a simple two-member panel of the full Board, as Acoli and amicus the ACLU-NJ have argued, we are hard pressed to view the legislative language as restrictively as they do in the setting of this appeal. They maintain that a full hearing is required only when the two-member panel recommends parole to a convicted murderer. However, that literal reading of the language misses the overall import of the consequences of the legislative outcome that the 1989 amendatory language sought to achieve, namely to ensure that no convicted murderer would be released without having had a full Board hearing to consider the murder inmate’s grant of parole.
Although not expressly stated in that manner in the 1989 amendatory language when the Legislature was reacting to a panel of the Board recommending parole without any full Board review of that result, that animating principle is implicit in the increased procedural hurdles that the Legislature saw fit to insert into the then-existing parole process for inmates incarcerated for murder. At the very least, the language is ambiguous in expressing the sense of this amendment and its operation in all settings involving the parole release of a convicted murderer, making resort to legislative history to resolve the question raised by the ambiguity appropriate.
Here the legislative history that is available does not support the constrained reading, advanced by Acoli and by the ACLU-NJ, of the 1989 amendatory language contained in the first sentence of subsection (f). Instead, the Board’s proposed interpretation finds support from the general understanding of the amendment’s import contained in contemporaneous legislative history. See, e.g., Office of the Governor, News Release (June 29, 1989) (explaining on Governor’s signing of bill into law that new legislation “requires the full Parole Board to review parole recommendations for inmates convicted of first-degree murder”); Senate Judiciary Committee, Statement to Assembly No. 2772 (signaling same expectation).
*229 Moreover, generally, when construing language of a statutory scheme, deference is given to the interpretation of statutory language by the agency charged with the expertise and responsibility to administer the scheme. See US Bank, N.A. v. Hough, 210 N.J. 187, 199, 42 A.3d 870 (2012) (explaining that when plain language leads to more than one reasonable interpretation, extrinsic evidence may be considered, and that such evidence includes agency’s interpretation of statute it is tasked with administering). Here that agency — the Board — maintains that it operated under the expectation that, if ever the Board’s affirmance of a two-member panel’s decision to deny release to a convicted murderer were reversed on judicial review, the full Board would have the opportunity to conduct its final and full Parole Board hearing that is implicitly required by N.J.S.A. 30:4 — 123.55(f), including the opportunity to interview the inmate in that setting.
The Board points to the lack of that full review here and argues, persuasively, that its absence is significant and contrary to the legislative design for careful and thorough review at all administrative levels prior to parole release of murder inmates. The Parole Board maintains that there are differences between a review on the papers and a plenary hearing. One reviews a denial by the two-member panel, and, in the other, the full Board is itself considering whether to approve the grant of parole to a convicted murderer. We accept that those hearings are different in nature and kind, the latter calling on the dynamic in-person interaction of the full Board’s members with the convicted murderer to assess collectively the inmate’s suitability for parole. In that exchange, the diverse backgrounds and expertise of the individual Board members may be utilized and inform the considered judgment of the decisional body.
It makes little administrative sense to expect the full Board to conduct the equivalent of a full Board review for release of a convicted murderer whenever a two-member panel withholds parole. To convert every such appeal to a full-blown review would waste Board personnel and fiscal resources. Rather, it is reason *230 able for the Board to focus its attention on the inmate’s reasons for criticizing the two-member panel’s record and decision and have that limited review be subject to judicial review before the Board is required to conduct a resource-intensive full hearing.
We recognize that the agency’s implementing regulations did not specify such a step,' as it had never before occurred (all prior judicial parole orders of murderers having come after the full Board had conducted a full review). However, the regulatory scheme in its totality underscores the need for ensuring a murder inmate’s appearance at a full Board examination prior to securing parole release, see N.J.AC. 10A:71-3.19(c), and specifies the extensive actions that the Board and the Department of Corrections must take in order to satisfy that important step in the process. In light of the rarity of that circumstance, we do not place much weight on the failure for such an occurrence to be spelled out in the administrative regulations. The Board’s interpretation of what the Legislature expected of it in the execution of its delegated predictive task is reasonable and thus entitled to deference by the courts. In re Election Law Enf't Comm’n Advisory Op. No. 01-2008, 201 N.J. 254, 262, 989 A.2d 1254 (2010) (“We will defer to an agency’s interpretation of both a statute and implementing regulation, within the sphere of the agency’s authority, unless the interpretation is ‘plainly unreasonable.’ ” (quoting Reilly v. AAA Mid-Atl. Ins. Co. of N.J., 194 N.J. 474, 485, 946 A.2d 564 (2008))).
That supports showing patience, exercising judicial restraint, and allowing the administrative process to reach its conclusion. By virtue of our remand, we ensure that subsequent judicial review, if critical of the substance of that ultimate determination by the Parole Board under the applicable standard of review, does not impermissibly result in a judicial substitution of a decision reposed by the Legislature with the Parole Board. The Appellate Division here declined to remand to the Parole Board for a full hearing, as was requested on reconsideration by the Parole Board. The panel, essentially, saw no point to that step, having itself evaluated Aeoli’s bases for asserting that he is ready for release *231 and determining that there has been no convincing reason presented to date to require his further incarceration. That remedy basically substituted the appellate panel’s judgment for that of the agency charged with the expertise to make such highly predictive, individualistic determinations — the full Parole Board. We are reluctant to agree with the appellate panel that such a determination should have been made without having allowed the completion of all steps that the Legislature deemed necessary in the deliberation on paroling a convicted murderer.
Finally, we note that statutory construction abhors an interpretation that would render meaningless words within a statute. Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 587, 59 A.3d 561 (2013) (observing as “bedrock assumption” that Legislature does not include meaningless language). “[E]very effort should be made to avoid rendering any part of the statute superfluous.” State in Interest of K.O., 217 N.J. 83, 91, 85 A.3d 938 (2014). In 1993, the Legislature pointedly added reference to the rights of victims, stating
The board shall notify the victim’s family of that hearing and family members shall be afforded the opportunity to testify in person or to submit written statements. [L. 1993, c. 222, § 1.]
That language supports the conclusion that, prior to a murder inmate’s parole release, the Legislature expected that the full Board would conduct a hearing (1) with the inmate present for examination, not a paper review of the record below, and that (2) the victim or victims would receive notice of that hearing and be given the opportunity to address the Board and to witness the full Board’s interaction with the incarcerated murderer prior to his or her approval for release. Under the truncated review that occurred here, and on which the Appellate Division based its order requiring the Board to set conditions for Acoli’s release, that language would be substantially neutered, if not rendered meaningless. It is not equivalent to point to a victim’s right to submit material to the two-member panel that would then be part of the paper-record review conducted by the full Board on a recommendation of parole denial.
*232 In sum, the Appellate Division’s remedy missed a step by not remanding to the full Board for a full hearing and assessment of Acoli’s suitability for parole release. We express no view on what the outcome of that full assessment should be. Whatever it shall be, there will be a right of appeal to the Appellate Division. If Acoli is denied parole, then that would be the appropriate time at which the Appellate Division might have occasion to consider whether the unusual remedy of judicially ordered parole of a convicted murderer might be in order. However, that possibility must await completion of the parole process in its entirety.
V.
The remedy imposed by the Appellate Division is reversed, and the matter is remanded for further proceedings consistent with this opinion.[3]

 Acoli previously had been denied parole in 1993 and 2004.

 The Board represents that in the twenty-five years since the enactment of NJ.S.A. 30:4-123.55(f), in cases where appellate courts ordered the parole of a murder inmate, the full Parole Board had conducted a full hearing. That historical fact is not disputed.

 It is difficult to reconcile the charged nature of the dissent's language with the commonplace remedy of a remand to complete an administrative process, as ordered in this matter. To the extent that the dissent is so impassioned because it is Acoli whose case is remanded, we add only this. It was the procedural setting of this case that gave rise to an issue of first impression. Our resolution of that issue will govern the parole process for all inmates incarcerated for murder, not only Acoli.