**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2485-15T3

ANTONIO SANCHEZ,

    Appellant,

v.

NEW JERSEY STATE PAROLE BOARD,

    Respondent.

_____

        Submitted September 12, 2017 — Decided October 19, 2017

        Before Judges Leone and Mawla.

        On appeal from the New Jersey State Parole Board.

        Antonio Sanchez, appellant pro se.

        Christopher S. Porrino, Attorney General, attorney for respondent (Lisa A. Puglisi, Assistant Attorney General, of counsel; Gregory R. Bueno, Deputy Attorney General, on the brief).

PER CURIAM

    Appellant Antonio Sanchez challenges the March 25, 2015 final

administrative decision of respondent, the New Jersey State Parole

Board (Board), denying parole and establishing a 120-month future eligibility term (FET). We affirm.

                                    I.

On April 4, 1984, Sanchez, then on probation, murdered the victim Enrico Castillo. Sanchez and co-defendant Luis Columbie came to the doorway of the victim's apartment armed with a shotgun. They demanded the victim repay a $10 debt. When the victim said he did not have the money, Sanchez killed the victim by shooting him in the head and chest with the shotgun.

After the incident, Sanchez and Columbie fled the scene and were preparing to flee Newark in a car, but officers arrested them. The officers recovered from the car a sawed-off shotgun and a sawed-off rifle, both loaded.

A jury found Sanchez guilty of first-degree murder, second-degree possession of a weapon for an unlawful purpose, and two counts of third-degree possession of a prohibited weapon. The trial court sentenced defendant on February 28, 1985, to life in prison with a thirty-year mandatory minimum. We affirmed his conviction. State v. Sanchez, 224 N.J. Super. 231 (App. Div.), certif. denied, 111 N.J. 653 (1988).

During his time at Southwoods State Prison, Sanchez acquired an "abysmal institutional record" of eighty-four infractions. Thirty-nine were serious, including two armed assaults, thirteen

unarmed assaults, three weapon possession offenses, two fighting offenses, and four threat offenses.

Sanchez became eligible for parole in the summer of 2014. On March 19, 2014, Sanchez received an initial hearing in front of a hearing officer, who referred the matter to a panel for a hearing pursuant to N.J.A.C. 10A:71-3.15(b).

A two-member panel interviewed Sanchez, who stated as follows. Earlier on the day of the murder, he was socializing with the victim, who was gambling and drinking alcohol excessively. The victim borrowed $10 from Sanchez, and then asked for more money. When Sanchez refused, the victim pulled a knife and stabbed Columbie. Sanchez left, got a shotgun, returned, and shot the victim.

On April 4, 2014, the two-member panel, composed of Thomas Haaf and Lloyd Henderson, denied Sanchez parole and referred his case to a three-member panel for the separate determination of a FET outside of administrative guidelines.

The two-member panel gave the following reasons for denying parole: Sanchez had a prior criminal record; his criminal record became "increasingly more serious"; he committed his murder offense while on probation; he had a poor institutional adjustment; he displayed insufficient problem resolution; he lacked an adequate parole plan; and his risk evaluation assessment score

indicated that he posed a "medium" risk to recidivate. In particular, based on its interview of Sanchez, the panel found he "lacked insight into his criminal behavior," "minimized his conduct," and needed to address criminal thinking and to improve his decision making.

Because the two-member panel concluded that the presumptive FET was not appropriate, a three-member panel had the sole task of determining Sanchez's FET outside of the administrative guidelines as required by N.J.A.C. 10A:71-3.21(d)(1). This three-member panel was comprised of Haaf, Henderson, and Yolette Ross. On September 10, 2014, in the Notice of Decision, the three-member panel imposed a 120-month FET for the same reasons the two-member panel denied parole.

On November 13, 2014, the three-member panel issued a notice of decision detailing its reasons for establishing a 120-month FET. Specifically, after a "comprehensive review of the entire record" the three-member panel found it "clear that [Sanchez] continue[s] to remain a substantial threat to public safety." Thus, "any term less than a one hundred and twenty (120) month future eligibility term would be wholly inconsistent with the conclusion that [Sanchez] ha[s] not shown the requisite amount of rehabilitative progress in reducing the likelihood of future criminal activity."

Sanchez appealed the three-member panel's decision on the Board. Haaf, Henderson, and Ross recused themselves from participating in the Board's final agency decision. On March 25, 2015, the full Board affirmed the decisions to deny Sanchez parole and to impose the 120-month FET generally for the reasons articulated by the two-member and three-member panels respectively.

Sanchez appeals, raising the following arguments:

> POINT I — APPELLANT HAS ALREADY SERVED THE PUNITIVE PORTION OF HIS SENTENCE AND THERE IS NOTHING IN THE RECORD[] TO SUGGEST THAT A SUBSTANTIAL [sic] LIKELIHOOD EXISTS THAT APPELLANT WILL COMMIT A NEW CRIME IF RELEASED ON PAROLE AT THIS TIME, ESPECIALLY WHEN APPELLANT HAS NO ADULT AND/OR JUVENILE RECORD, THEREFORE, THE DECISION OF THE N.J. STATE PAROLE BOARD TO DENY HIM PAROLE MUST BE REVERSED.
>
> POINT II — APPELLANT CONTENDS THAT FOR THE N.J. STATE PAROLE BOARD TO ESTABLISH A 120 MONTH FET IS CLEARLY INAPPROPRIATE AND MUST BE REVERSED TO IMPOSE AN APPROPRIATE TERM IN CONFORMITY WITH THE LAW.

## II.

"[T]he Parole Board is the 'agency charged with the responsibility of deciding whether an inmate satisfies the criteria for parole release under the Parole Act of 1979.'" Acoli v. N.J. State Parole Bd., 224 N.J. 213, 222, cert. denied, __ U.S. __, 137 S. Ct. 85, 196 L. Ed. 2d 37 (2016). The

Board's discretionary powers are broad. <u>Trantino v. N.J. State Parole Bd.</u>, 166 <u>N.J.</u> 113, 173 (2001). We will disturb the Board's decisions only if "arbitrary, capricious or unreasonable, or [if] not 'supported by substantial credible evidence in the record as a whole.'" <u>Id.</u> at 191-92 (emphasis omitted); <u>see also</u> <u>Acoli</u>, <u>supra</u>, 224 <u>N.J.</u> at 222-23.

Our "limited scope of review is grounded in strong public policy concerns and practical realities." <u>Trantino</u>, <u>supra</u>, 166 <u>N.J.</u> at 200. "[T]he Parole Board makes 'highly predictive and individualized discretionary appraisals,'" which "must realistically be recognized to be inherently imprecise, as they are based on 'discretionary assessment[s] of a multiplicity of imponderables.'" <u>Acoli</u>, <u>supra</u>, 224 <u>N.J.</u> at 222 (alteration in original) (citations omitted). We must hew to our standard of review.

### III.

Applying that standard, we affirm the Board's decision to deny parole. Prior to 1997, an inmate had to be released on parole unless there was "a substantial likelihood that the inmate will commit a crime under the law of this State if released on parole at such time." <u>N.J.S.A.</u> 30:4-123.53(a) (amended 1997). That is the standard applicable to defendant, whose crime was committed

in 1984.  <u>Trantino v. N.J. State Parole Bd.</u>, 331 <u>N.J. Super.</u> 577, 605 (App. Div. 2000), <u>aff'd as modified</u>, 166 <u>N.J.</u> 113, 126 (2001).[1]

The Board properly found that "a preponderance of evidence indicates there is a substantial likelihood that [Sanchez] would commit a crime if released on parole at this time."  Because of the "essentially factual nature" of the Board's determination that an inmate is substantially likely to reoffend, "a reviewing court is [only] obligated to '"determine whether [that] factual finding could reasonably have been reached on sufficient credible evidence in the whole record."'"  <u>Trantino</u>, <u>supra</u>, 166 <u>N.J.</u> at 172 (citation omitted).  Further, our jurisprudence dictates "[w]e are . . . required to accord deference to the findings of the administrative agency that are substantially influenced by its opportunity to hear and see the witness[] and to have the 'feel of the case,' an opportunity which a reviewing court cannot enjoy."  <u>Trantino</u>, <u>supra</u>, 166 <u>N.J.</u> at 200 (citation omitted).

The Board adopted the two-member panel's findings based on <u>N.J.A.C.</u> 10A:71-3.11(b), which "contain[s] a non-exhaustive list of multiple factors the Board may consider in determining whether

---

[1] In 1997, that statute was amended to allow the board to deny parole when the preponderance of the evidence indicates "there is a reasonable expectation that the inmate will violate conditions of parole . . . if released on parole at that time."  <u>N.J.S.A.</u> 30:4-123.53(a).

an inmate should be released on parole." Hare v. N.J. State Parole Bd., 368 N.J. Super. 175, 180 (App. Div.), certif. denied, 180 N.J. 452 (2004).

Neither the two-member panel nor the Board focused solely on the nature of Sanchez's offense. They also considered "[s]tatements by the inmate reflecting on the likelihood that he . . . will commit another crime" if released on parole. N.J.A.C. 10A:71-3.11(b)(17).

During the two-member panel's discussion with Sanchez, he repeatedly claimed the murder was a reaction to the victim allegedly stabbing Columbie earlier. The panel viewed these responses as Sanchez "turn[ing] a blind eye to the fact that an extended period of time transpired between the stabbing . . . and [Sanchez] retrieving the shotgun[,] returning to the scene and firing it at the victim's head/chest." The panel directly asked if the victim's inability to repay $10 was a justifiable reason to fire the weapon, and Sanchez "sidestepped the issue and reiterated that the victim had a knife and was hostile."

As the Board noted, the two-member panel properly determined Sanchez exhibited insufficient problem resolution because he lacked insight into his crime. The panel found Sanchez simply treated "his criminal acts as justified — although he had left [the victim's house] and came back. Views his behavior as a result

of bad people — not himself. Same with his prison behavior — a result of other inmates' actions — not his decisions." Further, the panel noted "the record supports that [Sanchez] do[es] not understand the violent reactionary and thought process [he] employed when [he] killed the victim in such an extreme manner." The Board noted the panel found sufficient evidence that Sanchez was unable to acknowledge the extent of his actions involved in the murder and repeatedly chose to "place the blame for [his] actions firmly on the shoulders of the victim."

The two-member panel and the Board found during Sanchez's three-decade incarceration, he similarly did not take responsibility for his multitude of often serious prison infractions, which included armed assaults, unarmed assaults, weapons possession, threats, bodily harm, and fighting. See N.J.A.C. 10A:71-3.11(b)(1); N.J.A.C. 10A:71-3.11(b)(2).[2] The Board adopted the panel's view that Sanchez "accepted zero responsibility" and stated other inmates and staff members "instigat[ed] conflicts with him." The board noted, "[t]here was not one point during [his] hearing wherein [he] accepted the blame or responsibility" for any of his actions, in or out of the prison

---

[2] As the three-member panel noted, Sanchez's infractions "have components of violent, threatening, and confrontational behavior which [he] employed in the murder offense."

setting. Additionally, the Board noted that Sanchez has not sufficiently addressed a substance abuse problem.

Another factor leading to the Board's denial of Sanchez's parole request was the inadequacy of his parole plan. See N.J.A.C. 10A:71-3.11(b)(14). Sanchez originally stated that he "had no place to live" and sought a "placement." He also suggested that he would live with family in another state. The panel found his parole plan inadequate because as an inactive member of society for the past three decades, he would require a "stable and supportive living arrangement along with a productive and viable employment opportunity." In its professional expertise, the Board found neither plan would accomplish this feat. The Board did not hold Sanchez's alleged difficulties with English against him.

The Board also considered mitigating factors, including Sanchez's lack of infractions since 2009, and his participation in behavior-specific programs, such as therapeutic and job skill programs. Sanchez argued that his involvement in Islamic studies, courses on HVAC, pre-GED, culinary arts, building trades, and woodworking, and his perfect attendance at the "Cage Your Rage" anger management program showed there was no substantial likelihood he would commit a crime if released on parole. The Board found these mitigating factors did not overcome the

substantial evidence that appellant was likely to engage in future criminal behavior.

Sanchez mistakenly claims he was not given an in-depth psychological evaluation. In fact, he was given such an evaluation on December 29, 2013, which has been included in the Board's confidential appendix. The evaluation was properly relied on by the two-member and three-member panels and the Board. See Trantino, supra, 166 N.J. at 170.

We are convinced that it was neither arbitrary nor capricious for the Board to deny Sanchez parole.

IV.

We likewise are satisfied that the 120-month FET imposed by the Board is neither arbitrary nor capricious. Sanchez contends the Board erred by accepting the three-member panel's departure from the twenty-seven-month presumptive FET for murder and other crimes with sentences in excess of fourteen years. N.J.A.C. 10A:71-3.21(a)(1). However, the three-member panel may set a FET differing from N.J.A.C. 10A:71-3.21(a)-(c) "if the future parole eligibility date which would be established pursuant to such subsections is clearly inappropriate due to the inmate's lack of satisfactory progress in reducing the likelihood of future criminal behavior." N.J.A.C. 10A:71-3.21(d).

11

The Board must focus its attention squarely on the likelihood of recidivism when reviewing the FET determination. See McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 565 (App. Div. 2002) (finding the imposition of a thirty-year FET within the Board's discretion). The Board acknowledged the likelihood of recidivism and Sanchez's lack of insight into his crime were "critical question[s] in [Sanchez's] case."

Sanchez's inability to take responsibility for his deadly actions and his numerous institutional infractions were considered by the Board. The Board noted some of Sanchez's infractions "have components of violent, threatening and confrontational behavior which [he] employed in the murder offense." Sanchez's lack of understanding about taking the victim's life also suggested to the Board that the counseling and programs he attended "had not assisted [him] in gaining any insight into [his] behavioral issues." Thus, the Board's decision to uphold the 120-month FET due to Sanchez's lack of satisfactory progress in reducing his likelihood of future criminal behavior was not arbitrary, capricious, or unreasonable.

Defendant incorrectly claims that he had no adult or juvenile record. Although the two-member panel listed Sanchez's prior crimes as armed robbery and aggravated assault, the three-member panel correctly noted that he had been convicted only of receiving

stolen property and escape. Moreover, the decisions of both panels were amended to indicate his prior criminal record was "minimal" and this was a mitigating factor. Most importantly, the Board recognized both panels had amended their decisions. The Board's determination focused on Sanchez's lack of insight into the murder, and not his minimal criminal record. Thus, the two-member panel's initial error was corrected by the panels and the Board, and provides no basis for overturning the Board's conclusions to deny parole and impose a 120-month FET.

V.

Finally, Sanchez claims the Board violated <u>N.J.A.C.</u> 10A:71-1.5(b). He argues that because Board members Haaf and Henderson served as the two-member panel that initially considered his parole application, they were barred from being part of the three-member panel, with Board member Ross, that established his 120-month FET.

Sanchez misreads the regulation. In pertinent part, <u>N.J.A.C.</u> 10A:71-1.5(b) states: "A Board member shall not participate in any Board or Board panel disposition of <u>the member's initial decision</u>[.]" <u>Ibid.</u> (emphasis added). Under the plain language of the statute, the board member is merely prohibited from acting as an appellate reviewer of his or her own decision.

Here, the two-member panel and the three-member panel were responsible for two different determinations, respectively,

whether to parole Sanchez and how long his FET should be. The three-member panel was not an appellate reviewer of the two-member panel's denial of his parole request. Rather, the three-member panel exclusively set the length of the FET.

It was the Board which reviewed the two-member panel's decision to deny parole. All three members recused themselves from participating in the Board's final agency decision. Therefore, no board member reviewed his or her own "initial decision" during this process, making the Board in compliance with N.J.S.A. 10A:71-1.5(b).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION