**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1977-17T3

ROBERT HARMON,

     Appellant,

v.

NEW JERSEY STATE
PAROLE BOARD,

     Respondent.

_____

Submitted January 9, 2019 – Decided January 28, 2019

Before Judges Nugent and Mawla.

On appeal from the New Jersey State Parole Board.

Robert Harmon, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Christopher C. Josephson, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Robert Harmon challenges a September 20, 2017 final administrative decision of respondent, the New Jersey State Parole Board (Board), denying parole and establishing a 120-month future eligibility term (FET). We affirm.

Harmon is incarcerated in East Jersey State Prison on an aggregate term of life imprisonment with a mandatory minimum term of thirty years. He was tried and convicted by a jury for murder, theft, possession of weapon for an unlawful purpose, and unlawful possession of a weapon. He had fatally stabbed a South Amboy Water Works employee on February 25, 1987. Harmon was seventeen at the time.

Harmon's uncle and brother implicated him in the incident. His brother recounted that Harmon returned home after the stabbing, entered his brother's bedroom, and screamed he had just "iced" the victim. Harmon showed his brother the victim's money and credit cards. These items, and Harmon's hands, were covered in blood. As Harmon washed himself he kept yelling "[y]ou should have seen how I iced him." Harmon then placed his clothing and the victim's credit cards in a bag and stated "I'll be right back. I have to dump [the items] in the river." Harmon also revealed that he threw the murder weapon, and a mop he used in attempt to clean the blood, into the Water Works' pond.

A-1977-17T3

When Harmon returned, he, his brother, and his brother's girlfriend used the blood stained money to purchase gas and pizza.

Harmon's uncle informed police the murder had been premeditated. He reported Harmon had retrieved a knife from the kitchen on the evening of the murder and announced he was headed to the Water Works to kill the victim.

When Harmon surrendered to police on February 27, 1987, he claimed he was intoxicated during the incident and had stabbed the victim because he attempted to touch Harmon in a sexual manner. Harmon was tried as an adult and his conviction followed.

Prior to this offense, Harmon had an extensive juvenile record. After the murder, while serving his sentence, Harmon was convicted of another offense and incurred a litany of serious infractions. In October 2008, he had a physical altercation with several corrections officers, two of whom were injured and sent to the hospital. As a result, he was sentenced to a suspended term of eighteen months incarceration for aggravated assault.

Harmon also committed twenty-nine infractions during his incarceration. Ten of these offenses were deemed serious infractions. The most recent offense occurred in March 2013.

When Harmon became eligible for parole a hearing officer referred his matter to a two-member Board panel. On December 8, 2016, the two-member Board panel reasoned there was a likelihood Harmon would commit another crime if released on parole. The panel noted mitigating factors, including Harmon's willingness, and actual participation in, several institutional and behavioral programs, as well as his favorable institutional adjustment and the restoration of commutation time. Nonetheless, it determined they were outweighed by several negative factors.

Indeed, the Board panel concluded Harmon's prior juvenile record, the murder, and the offenses committed during his incarceration, were substantial. The Board panel found the new offenses Harmon committed while on probation demonstrated probation had not deterred his conduct. The Board panel noted his institutional infractions were "numerous[,] persistent[, and] serious[,]" and had resulted in the loss of commutation time. Referring to the murder and the infractions committed in prison, the Board panel concluded Harmon had insufficient problem resolution and specifically stated:

> [Harmon] cannot explain why he reacted so violently when [the] victim attempted to grab him sexually and his response regarding his multiple assorted infractions involving assaults was that he wanted to show he was "not going to be anyone's bitch." He has far to go to better understand his angry side.

4

The Board panel noted it based its decision on its interview of Harmon, the documentation in his case file, and a risk assessment. These materials, specifically, a September 2016 psychological evaluation, placed Harmon within the "medium" category for risk of re-offending and risk of future violence, and stated the likelihood he would successfully complete parole was "fair to poor." Recounting the psychological evaluation, the Board panel stated:

> [The psychologist] noted that Harmon's test results were reflective of someone who is defensive; that though he may make a good first impression, that friendliness is a veneer that hides a deeper contempt for conventional morals; that he is restless, prone to impulsiveness and moody; that he is persistent in seeking to engage in self-dramatizing behavior; that [h]is relationships are shallow and fleeting; and that MCMI-III test results suggest the prognosis for Harmon to remain out of trouble is [poor].

The two-member Board panel denied parole and referred the matter to the three-member board for the establishment of a FET.

On March 1, 2017, the three-member panel reached the same conclusions as the two-member panel, denied parole, and established a 120 month FET. Harmon appealed to the full Board and raised the following arguments: (1) the Board panel failed to document the substantial likelihood he would commit a new offense if paroled; (2) it failed to consider mitigating factors, including his

5

participation in rehabilitative programs and counseling, and that his last serious infraction occurred approximately ten years ago; (3) it failed to consider the merger of Harmon's theft and weapons offenses with the murder offense; (4) the Board panel double counted his prior record and his prior offenses; (5) the Board panel's consideration of the circumstances of the murder amounted to double jeopardy; and (6) it failed to consider that Harmon had not used drugs or alcohol for thirty years, had "changed and grown up," and had a residence and employment awaiting him upon his release.

The Board rejected the aforementioned arguments. It noted the Board panel had documented the reasons for its decision, which were set forth in a written decision that had considered Harmon's record, a risk assessment and psychological evaluation, and Harmon's statements to the Board panel. The Board noted the mitigating factors were considered and the Board panel "did not solely base its decision to deny parole on the negative aspects in the record[.]" The Board agreed with the Board panel's determination that Harmon "demonstrated a lack of satisfactory progress in reducing future criminal behavior and that . . . a [FET] within the statutorily provided guidelines is inappropriate[.]" The Board concluded

> after thirty . . . years of incarceration, [Harmon] present[ed] as not recognizing the seriousness of [his]

violent actions; as displacing part of the responsibility for [his] actions on others in [his] background and personal life; as not taking full responsibility for [his] institutional disciplinary infractions; and as not possessing appropriate insight into the stressors that impel [his] behavioral choices and into the methods and means of resolving disputes in a manner not involving confrontation or violence.

The Board rejected as without merit Harmon's assertion it had failed to consider the alleged merger of his sentences. The Board stated "the record clearly shows that the offenses on which [Harmon was] sentenced are represented as multiple counts contained in one indictment." Similarly, the Board rejected Harmon's claim it had double counted his prior criminal record and explained "that[] consideration of the quantity and type of prior convictions, is qualitatively different than consideration of [Harmon's] adjustment to any prior terms of probation or to any special conditions or terms attached to previous convictions." Additionally, the Board rejected Harmon's assertion of a double jeopardy violation noting the parole decision was not a criminal prosecution, but instead the role of the Board panel, which "is required to make a determination as to your suitability for parole release."

The Board further found the panel considered, but rejected Harmon's claims that he had been drug and alcohol free, and had matured. The Board explained:

7

The Board panel determined, based on your interview and its review of the file, that you do not demonstrate the insight necessary to be a viable candidate for parole release at the present time. Although you may believe that you have made progress enough sufficient to ready you for parole release, the Board panel found otherwise. Based on its review of the record, the Board concurs with the Board panel's determination[.]

Similarly, the Board noted Harmon's residence and employment plans "were noted on the [c]ase [a]ssessment at the time of [his] [i]nitial [h]earing, were included in the documentation in [his] case file, and were considered by the Board panel."

The Board concluded it

concur[red] with the determination of the . . . Board panel that a preponderance of evidence indicates that there is a substantial likelihood that [Harmon] would commit a new crime if [he] were released on parole . . . that a FET . . . is clearly inappropriate due to [Harmon's] lack of satisfactory progress in reducing the likelihood of future criminal behavior, and the determination . . . to refer [Harmon's] case to . . . three-member panel . . . [which] establish[ed] a . . . [120] month FET.

This appeal followed.

I.

"[T]he Parole Board is the 'agency charged with the responsibility of deciding whether an inmate satisfies the criteria for parole release under the

8

Parole Act of 1979.'"  Acoli v. N.J. State Parole Bd., 224 N.J. 213, 222 (2016) (quoting In Re Application of Hawley, 98 N.J. 108 (1984)).  The Board's discretionary powers are broad.  Trantino v. N.J. State Parole Bd., 166 N.J. 113, 173 (2001).  We will disturb the Board's decisions only if "arbitrary, capricious or unreasonable, or [if they] are not 'supported by substantial credible evidence in the record as a whole.'"  Id. at 191-92 (emphasis omitted) (quoting Dennery v. Bd. of Educ., 131 N.J. 626, 641 (1993)); see also Acoli, 224 N.J. at 222-23.

Our "limited scope of review is grounded in strong public policy concerns and practical realities."  Trantino, 166 N.J. at 200.  "[T]he Parole Board makes highly predictive and individualized discretionary appraisals," which "must realistically be recognized to be inherently imprecise, as they are based on discretionary assessment[s] of a multiplicity of imponderables[.]"  Acoli, 224 N.J. at 222 (alteration in original) (internal citations omitted).

On appeal, Harmon argues the Board did not explain how it arrived at its decision to impose the FET.  He argues the Board considered the infractions he made during the first half of his incarceration period when he was young and immature, but did not consider the progress he has made since then.  He contends the imposition of the FET was arbitrary and capricious, outside of the guidelines,

and unsupported by the evidence he presented. He asserts the Board's decision does not provide any clarity as to what else he must do to secure his parole.

Harmon's arguments lack merit. The Board, and the Board panel's detailed findings, amply explained the reasons for imposing the FET. As we have noted, the decision considered Harmon's prior criminal record, offenses committed while on probation, disciplinary infractions, insufficient problem resolution, failure to understand his anger issues, and an objective risk assessment, which indicated a medium risk of recidivism.

Moreover, Harmon has had numerous serious infractions during incarceration. His infractions did not only occur as a young man. Rather, the record demonstrates infractions that occurred in 1991 to 1996, 1999, 2001 to 2002, 2006, 2008, and 2013, during his twenties, thirties, and forties. Furthermore, Harmon's statements during his hearing did not demonstrate an improvement. Indeed, as noted by the Board panel, he blamed his behavior on his youth and his desire to "not be perceived by other inmates as being 'weak.'" However, this failed to explain why his infractions spanned three decades.

Regarding the murder, according to the Board panel, Harmon "placed a significant emphasis on . . . claims that the victim's actions . . . impelled [him] to react in a violent manner." Regarding Harmon's prior criminal record, the

Board panel found he "placed the sole blame for [his] behavior on [his] uncle[.]" Thus, the Board panel concluded "the record, including the answers [Harmon] provided to questioning, bespeak that [he does] not have an adequate understanding into why [he] resolve[s] conflict[s] with anti-social actions and behavior." The Board panel concluded "although [Harmon had] participated in programming, more work needs to be done by [him] with additional programming to address the issues detailed in this notice." For these reasons, the decision to deny parole was not arbitrary, capricious, or unreasonable and was supported by substantial credible evidence in the record.

We likewise are satisfied the 120-month FET imposed by the Board was neither arbitrary, capricious, nor unreasonable. There is a twenty-seven-month presumptive FET for murder and other crimes with sentences in excess of fourteen years. N.J.A.C. 10A:71-3.21(a)(1). However, the three-member Board panel may set a FET differing from N.J.A.C. 10A:71-3.21(a)-(c) "if the future parole eligibility date which would be established pursuant to such subsections is clearly inappropriate due to the inmate's lack of satisfactory progress in reducing the likelihood of future criminal behavior." N.J.A.C. 10A:71-3.21(d). The Board must "focus its attention squarely on the likelihood of recidivism" when reviewing the FET determination. McGowan v. N.J. State Parole Bd., 347

11

N.J. Super. 544, 565 (App. Div. 2002) (finding the imposition of a thirty-year FET within the Board's discretion).

Here, there was ample evidence to support the Board's conclusion Harmon had a likelihood of recidivism and lack of insight into his crime and behavior during incarceration. Harmon's inability to take responsibility for his deadly actions, and his numerous institutional infractions, were considered by the Board. Thus, the Board's decision to uphold the 120-month FET was not arbitrary, capricious, or unreasonable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1977-17T3