**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3254-19T2

GEORGE S. BUSSINGER,
a/k/a STEVE BUSSINGER,

     Appellant,

v.

NEW JERSEY STATE
PAROLE BOARD,

     Respondent.

_____

Submitted October 1, 2020 – Decided October 21, 2020

Before Judges Geiger and Mitterhoff.

On appeal from the New Jersey State Parole Board.

George S. Bussinger, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Suzanne Davies, Deputy Attorney General, on the brief).

PER CURIAM

George S. Bussinger appeals from a final agency decision of the New Jersey State Parole Board (Board) revoking his mandatory supervision status and establishing a twelve-month parole eligibility term. We affirm.

We derive the following facts from the record. In December 2001, Bussinger robbed a casino cashier at Caesar's Casino in Atlantic City. Later that month, he was arrested by Philadelphia Police for unrelated crimes committed in Pennsylvania. Bussinger admitted to committing the robbery when interviewed by detectives from New Jersey.

Bussinger pled guilty to first-degree robbery, N.J.S.A. 2C:15-1, and was sentenced to an eight-year term subject to eighty-five percent parole ineligibility and a five-year period of mandatory parole supervision upon his release from custody under the No Early Release Act, N.J.S.A. 2C:43-7.2.

On January 14, 2014, Bussinger was released from custody and began serving the five-year period of mandatory parole supervision. Prior to his release, Bussinger agreed to abide by the conditions of parole imposed by the Board or the District Parole Office, which included reporting in person to his parole officer, residing at a residence approved by his parole officer, obtaining permission from his parole officer prior to any change of residence, and obtaining permission from his parole officer prior to leaving the state of his

approved residence. Parole supervision was transferred to Pennsylvania, where he resided.

On July 7, 2017, Bussinger left his residential community program at Coleman Hall and never returned. Parole violation warrants were issued for his arrest. Bussinger made no attempt to contact his parole officer or seek approval to change his residence while he remained a fugitive. He was ultimately arrested in Philadelphia during a traffic stop on May 30, 2019, some twenty-one months after he absconded.

The Pennsylvania Board of Probation and Parole recommitted Bussinger for changing his residence without permission and failing to complete the required programming at Coleman Hall. It relied on Bussinger's own testimony in reaching that decision.

Shortly thereafter, the New Jersey State Parole Board subsequently served Bussinger with notice of a parole revocation hearing. At the hearing, Bussinger pleaded guilty to all three violations and admitted that he had failed to report in person, failed to live at his approved residence, and failed to obtain permission to change his residence.

Bussinger testified that he absconded in order to live with his mother, who had cancer. He did not seek permission to change his residence because he

thought it might be denied. Although his mother died in June 2018, Bussinger stated he did not plan to surrender until an anticipated "amnesty period" in May 2019 that never occurred.

The Board found that Bussinger violated his parole supervision terms and revoked parole supervision status. The Board ordered him to serve a twelve-month future eligibility term (FET). This appeal followed.

Bussinger raises the following points for our consideration:

> POINT I
>
> THE TERM "SERIOUS", AS USED IN N.J.S.A. 30:4-123.60 IS OVERLY BROAD (Not Raised Below).
>
> POINT II
>
> THE RESPONDENT FAILED TO SHOW THAT CLEAR AND CONVINCING EVIDENCE SUPPORTED ITS FINDING THAT THE VIOLATIONS WERE "SERIOUS" AS USED IN THE STATUTE.
>
> POINT III
>
> REVOCATION OF PAROLE WILL IMPEDE REHABILITATION CONTRARY TO THE LEGISLATIVE INTENT OF NEW JERSY PAROLE LAWS.

We have carefully considered Bussinger's arguments in light of the record and controlling legal principles. We affirm, substantially for the reasons

4

expressed in the Board's comprehensive written decision, which is supported by sufficient credible evidence in the record as a whole. R. 2:11-3(e)(1)(D). We add the following comments.

Our review of a Parole Board's decision is limited. Hare v. N.J. State Parole Bd., 368 N.J. Super. 175, 179 (App. Div. 2004). We "must determine whether the factual finding could reasonably have been reached on sufficient credible evidence in the whole record." Ibid. (citing Trantino v. N.J. State Parole Bd., 166 N.J. 113, 172, modified, 167 N.J. 619 (2001)). The appellant has "[t]he burden of showing that an action was arbitrary, unreasonable or capricious." McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002).

Applying these well-established principles, we discern no basis to overturn the Board's final decision. The Board considered the relevant facts and submissions in revoking his mandatory supervision status and establishing a twelve-month FET. The Board's determination is amply supported by the record and consistent with controlling law. Its decision was not arbitrary, capricious, or unreasonable.

The Board may revoke parole and return a parolee to custody when the parolee "seriously or persistently violate[s] the conditions of [parole]." N.J.S.A. 30:4-123.60(b). Bussinger argues that the term "seriously or persistently

violated" is overly broad and ambiguous because the word "serious" is not defined by statute or regulation. We disagree.

We recognize that "[t]he Legislature [has] not further define[d] the type of conduct it intended to capture within the statutory standard—'seriously or persistently violated.' And the Board has not adopted a regulation to guide exercise of its expertise to distinguish cases in which parole should and should not be revoked." Hobson v. N.J. State Parole Bd., 435 N.J. Super. 377, 382 (App. Div. 2014).

"Drawing on the diverse backgrounds of its members, the Parole Board makes 'highly predictive and individualized discretionary appraisals.'" Acoli v. N.J. State Parole Bd., 224 N.J. 213, 222 (2016) (quoting Beckworth v. N.J. State Parole Bd., 62 N.J. 348, 359 (1973)). The Board properly exercises its authority to revoke parole when there is "proof by clear and convincing evidence that the person 'has seriously or persistently violated the conditions' without any statutory or regulatory definition of that term.'" Hobson, 435 N.J. Super. at 382.

By any measure, Bussinger's parole violations were serious and persistent. He failed to abide by several important parole conditions. He did not turn himself in. The evidence was clear and convincing that he remained totally noncompliant for twenty-one months until he was arrested.

A-3254-19T2

In addition, for the first time on appeal in his reply brief, Bussinger argues that because of COVID-19, the Department of Corrections "is in a virtual lock-down" and "all rehabilitative programming has ceased." He claims that "the pandemic and conditions brought about by it make the revocation of parole unconstitutional" because "the revocation (i.e. punishment) does not . . . conform with contemporary standards of decency," is "grossly disproportionate to the offense," and "goes beyond what is necessary to accomplish any legitimate penological objective." (Alteration in original).

In addition, Bussinger argues that his "single-episode, nonviolent and noncriminal" violation of his parole conditions should not "subject him to the cruel, unusual and inhumane treatment that he will be subject to once the [COVID-19] virus enters the New Jersey Department of Corrections." We are unpersuaded by his argument. Bussinger violated several fundamental conditions of parole. The long-standing violations were ongoing until he was arrested.

Moreover, Bussinger, who is now forty-four years old, does not claim his age or any underlying medical condition makes him vulnerable to an enhanced risk of serious medical complications if he were to contract COVID-19, as recognized by the Center for Disease Control. Nor does he claim he suffers from

A-3254-19T2

serious medical conditions not adequately treated by the Department of Corrections. Instead, Bussinger raises a mere generalized fear of contracting COVID-19.

As our Supreme Court recently made clear, in the context of the COVID-19 pandemic, "the nature of the inmate's illness and the effect of continued incarceration on his health" are the basis for a change in custody. In re Request to Modify Prison Sentences, Expedite Parole Hearings & Identify Vulnerable Inmates, ___N.J. ___, ___ (2020) (slip op. at 20). In order to obtain a change in custody, the "inmate[] must present evidence of both an [underlying] 'illness or infirmity' . . . and the increased risk of harm that incarceration poses to that condition. A generalized fear of contracting an illness is not enough." Id. at 20-21.

Bussinger's unsupported argument is without sufficient merit to warrant further discussion in this opinion. R. 2:11-3(e)(2). Our holding is without prejudice to Bussinger filing a properly supported motion in the trial court for a change in custody under Rule 3:21-10(b).[1]

---

[1] Because he was convicted of first-degree robbery, Bussinger is not eligible for an emergency medical furlough under Executive Order No. 124 (Apr. 10, 2020).

Bussinger's remaining arguments are also without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3254-19T2