NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3830-13T4

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

  v.

WALTER A. TORMASI,

      Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **December 3, 2015**
>
> **APPELLATE DIVISION**

Submitted November 4, 2015 — Decided December 3, 2015

Before Judges Fisher, Espinosa and Currier.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 97-04-0234.

Walter A. Tormasi, appellant pro se.

Geoffrey D. Soriano, Somerset County Prosecutor, attorney for respondent (James L. McConnell, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

In this appeal of the denial of post-conviction relief, defendant argues that the judge erred in finding inadmissible a thirty-eight-page document which purports to be an affidavit — lacking its last page — authored by defendant's father in which he takes responsibility and proclaims defendant's innocence of

the murder for which he was convicted. The judge excluded consideration of the document because the thirty-ninth page, which was alleged by witnesses to have contained the signature of defendant's father and the jurat of a notary public, was missing. We reverse because, if sufficiently authenticated, the document was admissible pursuant to N.J.R.E. 803(c)(25); we remand, however, for further proceedings because the judge never evaluated the sufficiency of defendant's effort to authenticate the document through extrinsic evidence pursuant to N.J.R.E. 901.

The record on appeal reveals that in January 1998, defendant was tried and convicted, among other things, of the March 1, 1996 murder of his mother. Although sixteen years old at the time of the murder, defendant was tried as an adult and sentenced to a term of life in prison subject to a thirty-year period of parole ineligibility. We affirmed by way of an unpublished opinion, State v. Tormasi, No. A-5530-97 (App. Div. July 20, 2001); the Supreme Court denied defendant's petition for certification, 171 N.J. 42 (2002).

On July 8, 2002, defendant filed a post-conviction relief (PCR) petition, which was supplemented on December 8, 2005 and again on December 29, 2006. By way of these submissions, defendant argued the ineffective assistance of counsel because of his trial attorney's performance during the investigation

stage as well as at trial. The trial judge denied relief, and we affirmed. State v. Tormasi, No. A-2248-07 (App. Div. May 26, 2009). The Supreme Court denied defendant's petition for certification. 200 N.J. 474 (2009).

Defendant filed another PCR petition on December 22, 2011. This time defendant argued that newly-discovered evidence — what he refers to as the "affidavit" of his father (Attila Tormasi, Sr.) — demonstrates his innocence. That is, the document in question purports to contain Attila, Sr.'s acknowledgement that he hired a private detective to commit the murder for which defendant was convicted. In addition, as cogently explained by defendant's PCR counsel at the start of the evidentiary hearing:

> [t]here's a second aspect to the claim which is based in part on the affidavit that [Attila, Sr.] paid funds to [defendant's] appointed counsel . . . in order that he [Attila, Sr.] not be implicated in the murder and that the defense that it was [Attila, Sr.] who had orchestrated the murder not be presented to the jury . . . .

The judge conducted a two-day hearing limited to examining "the significance of [the] document and whether or not it is evidential as well as whether or not [defendant's trial attorney] had an un-waivable conflict during the term of his representation." After hearing defendant's three witnesses and the State's two witnesses, the PCR judge found, by way of a written decision, that the document was inadmissible. In

denying relief, the judge determined the document "was not hand-written, not signed, and there is no way of authenticating it," and described it "as a hearsay document which does not meet any exceptions to the hearsay rule permitting it as an evidentiary document." The judge concluded that "[s]ince [the document] is not evidence, it cannot be newly[-]discovered evidence."

For those reasons, the PCR judge looked no further into the allegations of the PCR petition, which was denied by order entered on April 9, 2014. Defendant appeals, arguing:

> I. ATTILA SR.'S SELF-INCRIMINATORY AFFIDAVIT CONSTITUTES NEWLY[-]DISCOVERED EVIDENCE ENTITLING DEFENDANT TO THE REVERSAL OF HIS CONVICTIONS UNDER APPLICABLE LAW.
>
> II. ATTILA SR.'S UNILATERAL FEE ARRANGEMENT WITH DEFENSE COUNSEL CREATED AN IMPERMIS-SIBLE CONFLICT OF INTEREST AND DEPRIVED DEFENDANT OF EFFECTIVE ASSISTANCE OF COUNSEL.[1]

We reverse and remand.

Newly-discovered evidence of the type that would require a new trial must be "(1) material to the issue and not merely cumulative or impeaching or contradictory; (2) discovered since the trial and not discoverable by reasonable diligence beforehand; and (3) of the sort that would probably change the jury's verdict if a new trial were granted." State v. Carter,

---

[1] For brevity's sake, we have not included the subparts to these two points.

85 N.J. 300, 314 (1981); see also State v. Puchalski, 45 N.J. 97, 107 (1965); State v. Artis, 36 N.J. 538, 541 (1962). The Supreme Court has further counseled that such evidence "must be reviewed with a certain degree of circumspection to ensure that it is not the product of fabrication, and, if credible and material, is of sufficient weight that it would probably alter the outcome of the verdict in a new trial." State v. Ways, 180 N.J. 171, 187-88 (2004).

There can be no doubt that another person's confession is material and constitutes the sort of evidence that would probably change the jury's mind. The PCR judge recognized this, observing in his written opinion that "if true" the document "places full responsibility for Frances Tormasi's murder on Attila, Sr., and exonerates [defendant]."

Ultimately, however, defendant was denied relief because the judge determined the document was inadmissible. This ruling was based on a misinterpretation of both N.J.R.E. 803(c)(25) and N.J.R.E. 901.

I

If the document can be authenticated as Attila, Sr.'s statement, it is admissible. In reaching this conclusion, we start by acknowledging that the document constitutes "hearsay" because it purports to be "a statement, other than one made by

the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.J.R.E. 801(c). We also recognize that hearsay "is not admissible except as provided" by the evidence rules or other law. N.J.R.E. 802.

N.J.R.E. 803(c) provides numerous exceptions to the general rule of hearsay inadmissibility. The PCR judge's decision and the parties' arguments focus on N.J.R.E. 803(c)(25); that rule, as relevant here, renders admissible a hearsay statement which

> was at the time of its making so far contrary to the declarant's pecuniary, proprietary, or social interest, or so far tended to subject declarant to civil or criminal liability, . . . that a reasonable person in declarant's position would not have made the statement unless the person believed it to be true.

Even though the document fits within the parameters of this hearsay exception, the judge relied on the exception's next and last sentence: "Such a statement is admissible against an accused in a criminal action only if the accused was the declarant." N.J.R.E. 803(c)(25). After quoting this sentence, the judge concluded only that:

> In the present case, [defendant] does not allege that he authored the writing; he is claiming that his father Attila is the declarant. Therefore, exception 803(c)(25) does not apply.

This conclusion was erroneous.

The evidence rule's last sentence, upon which the judge relied, deals with a discrete issue not applicable here because it only prohibits the use of a statement against interest when the declarant is someone other than the accused and only when offered "against an accused" in a criminal action. N.J.R.E. 803(c)(25). If, for example, at defendant's criminal trial, the prosecution offered another individual's statement which was against that individual's interest and declared defendant committed the murder, the last sentence of N.J.R.E. 803(c)(25) would bar its admission. See State v. White, 158 N.J. 230, 239 (1999) (recognizing, also, the Confrontation Clause problem generated by the admission of such a statement); see also State v. Bowser, 297 N.J. Super. 588, 598-99 (App. Div. 1997); State v. Felton, 131 N.J. Super. 344, 350-51 (App. Div. 1974), certif. denied, 68 N.J. 140 (1975). Only a statement made by the accused may be offered against the accused through application of this rule. See State v. Rucki, 367 N.J. Super. 200, 206-07 n.1 (App. Div. 2004).

The rule does not apply equally in reverse. An accused is entitled to offer a statement against interest made by another, usually for the purpose of demonstrating the guilt of another, so long as the statement falls within the other parameters of N.J.R.E. 803(c)(25); indeed, it is well-established that this

aspect of the rule must "not be applied mechanistically to defeat an accused's ability to present a defense." Biunno, Current N.J. Rules of Evidence, comment 6 on N.J.R.E. 803(c)(25) (2015); accord Chambers v. Mississippi, 410 U.S. 284, 302, 93 S. Ct. 1038, 1049, 35 L. Ed. 2d 297, 312-13 (1973); State v. Brown, 170 N.J. 138, 153 (2000).

The document in question purports to be a statement by Attila, Sr., against his interests — in that it expresses his responsibility for the murder of his wife — and snugly fits the requirements of N.J.R.E. 803(c)(25).[2] And because the document was offered by defendant and not against him, the rule's last sentence, upon which the judge relied, has no application. Barring an authentication problem, to which we now turn, the document was admissible.

## II

For two reasons we reject the judge's conclusion that "there is no way of authenticating" the document: (a) the

---

[2] The judge also found the document inadmissible because it was neither signed nor handwritten. This conclusion was erroneous as well. Contrary to the PCR judge's narrow view, N.J.R.E. 801(a) defines "statement" as "(1) an oral or written assertion or (2) nonverbal conduct of a person if it is intended by him [or her] as an assertion." Ibid. An unsigned written statement or even — as subsection (2) recognizes — a wink, nod or point of a finger may constitute a "statement" for these purposes. See, e.g., State v. Simmons, 52 N.J. 538, 541 (1968), cert. denied, 395 U.S. 924, 89 S. Ct. 1779, 23 L. Ed. 2d 241 (1969); State v. Jones, 308 N.J. Super. 15, 20, 22 (App. Div. 1998).

judge's decision regarding authentication was mistakenly based on the fact that the document is not self-authenticating pursuant to N.J.R.E. 902(h); and (b) the judge made no findings regarding the extrinsic evidence offered by defendant as the means of authenticating the document pursuant to N.J.R.E. 901.

A

We start by recognizing, as the judge observed, that the thirty-eight-page document is incomplete; the thirty-eighth page ends mid-sentence and the document lacks a signature line, a signature, and a jurat. Defendant provided the testimony of his brother (Attila, Jr.) and sister (Sophia), as well as an investigator who took custody of the document in December 2010 upon its discovery by Attila, Jr. soon after his father's death on November 16, 2010.

Defendant's siblings both testified they saw the document at some point years after the trial.[3] Attila, Jr., testified that in 2003, when he was twenty-two years old, he confronted his father about the document:

---

[3] Attila, Jr., testified he saw the document — in its complete state, with Attila, Sr.'s signature and a notarization — in 2003. Sophia, the oldest of the three siblings, testified Attila, Jr., showed her the document, also with a signed and notarized thirty-ninth page. She stated that she could only remember that she was shown the document sometime between 2000 and 2005; notwithstanding, Sophia was "one hundred percent certain it was signed by [her] father and that it was also notarized."

> Q. And how did that conversation go? If we were listening to the conversation, what did you say and what did he say to you?
>
> A. I don't remember exactly what was said.
>
> Q. In sum and substance?
>
> A. But I did tell him that I found [the complete version of the document] and I read it, and he was very upset, but I asked him if what was contained in there was the truth and he said yes but that he didn't — I shouldn't be snooping around his stuff and don't mention it to anybody and he got pretty upset.

Sophia similarly testified that she spoke to her father about the document she saw years earlier:

> Q. . . . You went to your father and as you just said —
>
> A. Yes, I —
>
> Q. — asked him why he signed this and what did he tell you?
>
> A. Yes. He — he told me that he signed it because it was true, and then from there he didn't want to talk about it. He got very agitated and very, very upset. So I just left it.

Both Attila, Jr., and Sophia testified they did not mention the affidavit to defendant or anyone else; as Sophia explained, her father "was not the type of person that liked to be doubled crossed."

Instead of making findings about the credibility of defendant's siblings, the PCR judge concluded only that the document could not be admitted because it "was not hand-written, not signed, and there is no way of authenticating it." We discern from the judge's opinion that, due to the lack of either a signature or jurat, the document was not self-authenticated. Although not cited, we assume the judge meant that the authentication problem could not be resolved by resort to N.J.R.E. 902(h), which declares that "[e]xtrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to . . . [d]ocuments accompanied by a certificate of acknowledgement executed in the manner provided by law by a notary public or other officer authorized by law to take acknowledgements."

We agree the document was not self-authenticated, but that conclusion does not bar authentication through other means.

B

N.J.R.E. 901 states that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter is what its proponent claims." The rule "does not require absolute certainty or conclusive proof" — only "a prima facie showing of authenticity" is required. State v.

Mays, 321 N.J. Super. 619, 628 (App. Div.), certif. denied, 162 N.J. 132 (1999); see also State v. Joseph, 426 N.J. Super. 204, 220 (App. Div.), certif. denied, 212 N.J. 462 (2012).

As Professor McCormick observed, "[a] writing may . . . be authenticated from a percipient witness that other connections exist between the writing and a particular person, and it is those connections that make that writing relevant." McCormick on Evidence § 222 at 86 (Bourn ed., 7th ed. 2013). Here, defendant provided the testimony of his siblings; they not only claimed to have seen the document in its complete, executed and notarized state, but they also described interactions with their then-living father that arguably suggested his familiarity with the document and his acknowledgement that its contents were "true."

"The fundamental idea of authentication is to connect the writing with the person alleged to be its author." In re Blau, 4 N.J. Super. 343, 351 (App. Div. 1949) (quoting 5 Wigmore on Evidence § 1496 at 319 (Chadbourn rev. 1974)). When such extrinsic evidence is presented, a judge in his gatekeeping role, Konop v. Rosen, 425 N.J. Super. 391, 411 (App. Div. 2012), may, to some degree, consider the credibility of the authenticating witnesses. That never occurred here. Absent a finding that Attila, Jr., and Sophia's testimony regarding the purported links between the document and their late father was

unworthy of belief, the judge was obliged to acknowledge the statement appeared to be what it purported to be and leave for the factfinder "more intense review of the document[]," Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, comment 1 on N.J.R.E. 901 (2015) (quoted with approval in Konop, supra, 425 N.J. Super. at 411), and a weighing of the testimony of the percipient witnesses. Because the judge did not apply this authentication method, we are compelled to remand.

III

We are mindful the "gatekeeper" and "factfinder" here are one and the same. Considering that N.J.R.E. 901 "does not erect a particularly high hurdle," United States v. Ortiz, 966 F.2d 707, 716 (1st Cir. 1992) (construing the similar Federal Rule of Evidence 901(a)), cert. denied, 506 U.S. 1063, 113 S. Ct. 1005, 122 L. Ed. 2d 154 (1993), and considering the judge's dual role with regard to its admission and weight, the better practice in such a circumstance will often warrant the admission of the document and then a consideration by the judge, as factfinder, as to whether it and all other evidence, warranted post-conviction relief through the further application of Carter, supra, 85 N.J. at 314, and Ways, supra, 180 N.J. at 188-89. We

A-3830-13T4

leave the matter to the experienced judge for his further consideration of these principles.[4]

We lastly emphasize what we are not deciding. In responding to this appeal, the State forcefully argues that the jury was presented with overwhelming evidence of defendant's guilt. That contention is not presently relevant. Today we consider only whether the reasons given by the PCR judge for excluding the document were mistaken. They were.[5]

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4] Because the judge implicitly concluded that his exclusion of the document was determinative of all other issues, we also remand for further consideration of defendant's ineffective-assistance contention that an unwaivable conflict arose when his father paid defendant's trial attorney so as to keep that attorney from presenting evidence casting blame on him (Attila, Sr.) for the murder. The judge failed to make findings on this issue as required by Rule 1:7-4(a).

[5] In addition, we note that the PCR judge did not address — and the State did not argue in the trial court or here — the timeliness of defendant's second petition, which was subject to Rule 3:22-12(a)(2) and Rule 3:22-4(b). Accordingly, as noted above, we have limited our discussion to the judge's ruling on the evidentiary issue.