NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3534-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

WALTER A. TORMASI,

     Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

January 13, 2021

APPELLATE DIVISION

Submitted November 18, 2020 – Decided January 13, 2021

Before Judges Alvarez, Sumners, and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 97-04-0234.

Joseph E. Krakora, Public Defender, attorney for appellant (Alicia J. Hubbard, Assistant Deputy Public Defender, of counsel and on the briefs; Walter A. Tormasi, on the pro se briefs).

Michael H. Robertson, Somerset County Prosecutor, attorney for respondent (Anthony J. Parenti, Jr., Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

GEIGER, J.A.D.

Defendant Walter A. Tormasi appeals from a February 5, 2018 Law Division order that denied without prejudice his Rule 3:21-10(b)(5) motion to correct an illegal sentence. We affirm.

We briefly recount the pertinent facts and extended procedural history.[1] In 1996, defendant shot his mother more than ten times with a 9-mm handgun—four of those shots were directed at her heart. He was sixteen at the time.

Defendant was waived to the Law Division and tried as an adult. In 1998, defendant was convicted of first-degree murder, N.J.S.A. 2C:11-3(a)(1), (2), and second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a).

During sentencing, the trial court noted that defendant had prior adjudications of juvenile delinquency for criminal mischief and obstructing the administration of law and was on probation for those offenses when he committed the murder. The court found the following aggravating factors: (a) the murder was committed in a "particularly cruel and depraved" manner, N.J.S.A. 2C:44-1(a)(1); (b) the risk defendant would "commit further offenses," N.J.S.A. 2C:44-1(a)(3); and (c) "[t]he need for deterring [defendant] and others

---

[1] The facts are set forth in detail in our opinion on direct appeal. State v. Tormasi, No. A-5530-97 (App. Div. July 20, 2001) (slip op. at 4-15) (Tormasi I), certif. denied, 171 N.J. 42 (2002).

from violating the law," N.J.S.A. 2C:44-1(a)(9). The court found no mitigating factors and concluded that the aggravating factors substantially outweighed the non-existent mitigating factors.

On March 27, 1998, following merger, defendant was sentenced to life imprisonment subject to a thirty-year period of parole ineligibility.[2] He was awarded 612 days of jail credit. In 2001, we affirmed the conviction and sentence on direct appeal. Tormasi I.

Between 2002 and 2011, defendant filed four unsuccessful petitions for post-conviction relief (PCR). We affirmed the denial of his first petition for PCR, which included a claim of ineffective assistance of counsel. State v. Tormasi, No. A-2248-07 (App. Div. May 26, 2009), certif. denied, 200 N.J. 474 (2009).

In 2011, defendant filed a PCR petition based on a claim that newly discovered evidence—an "affidavit" of his deceased father, Attila Tormasi, Sr.—demonstrated his innocence. State v. Tormasi, 443 N.J. Super. 146, 150 (App. Div. 2015). The document lacked the affiant's signature or jurat. Id. at 149. It purported to contain Attila Sr.'s "acknowledgement that he hired a

---

[2] Defendant was also sentenced to a concurrent four-year term for third-degree receiving stolen property on an unrelated indictment that is not the subject of this appeal. He pled guilty to that crime.

private detective to commit the murder for which defendant was convicted." Id. at 150. Defendant also alleged that his father had paid funds to his appointed trial counsel to avoid being implicated in the murder. Ibid. The PCR judge denied the petition, ruling that the document was inadmissible because it lacked Attila Sr.'s signature and was "a hearsay document which [did] not meet any exceptions to the hearsay rule." Ibid. We reversed and remanded "because, if sufficiently authenticated, the document was admissible pursuant to N.J.R.E. 803(c)(25)." Id. at 149.

On remand, the PCR judge found that the document was sufficiently authenticated and admissible but concluded the document was "not believable" and lacked "sufficient weight" to "probably alter the outcome of the [original] verdict." We affirmed. State v. Tormasi, No. A-4261-16 (App. Div. Oct. 31, 2018) (slip op. at 1), certif. denied, 237 N.J. 568 (2019).

On May 5, 2013, defendant moved to correct an illegal sentence under Rule 3:21-10(b)(5). Counsel was appointed to represent him. Defendant argued that the sentencing court had not consider his youth and associated mitigating factors. He noted that he committed the homicide when he was only sixteen and that he had already served more than twenty years of his sentence. Defendant asserted that "his life term of imprisonment deprive[d] him of an opportunity to

4

earn his release through demonstrated maturity and rehabilitation." He contended that it is likely that he will serve much longer than thirty years because the State Parole Board can repeatedly deny parole despite a showing of maturity and rehabilitation.

Defendant claimed he was entitled to resentencing under State v. Zuber, 227 N.J. 422 (2017), and Article I, Paragraph 12, of the New Jersey Constitution, which prohibits "cruel and unusual punishments." He relied on United States Supreme Court precedent that held the death penalty and mandatory life imprisonment without the opportunity for parole were unconstitutional when applied to crimes committed by a juvenile.

Defendant also relied on Miller v. Alabama, 567 U.S. 460 (2012), which held that a sentencing court must consider a juvenile offender's youth and attendant characteristics when imposing a life without parole sentence. He emphasized that Miller and Graham v. Florida, 560 U.S. 48 (2010), recognized that juveniles are different from adult offenders and are entitled to special treatment, even when sentenced for serious crimes.

In Zuber, our Supreme Court explained that "[t]hree general differences between juveniles under 18 and adults" make it "difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects

5

unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption." Zuber, 227 N.J. at 439, 440 (alteration in original) (quoting Roper v. Simmons, 543 U.S. 551, 569, 573 (2005)). Defendant asserted that Zuber should be extended to apply the Miller factors to any lengthy sentence imposed upon a juvenile offender.

Defendant contended that a juvenile sentenced as an adult to a life sentence with a substantial parole disqualifier should be heard as to their claim of rehabilitation with "consideration of the factors that are responsible for his or her crime, including immature neurological development and damage caused by childhood abuse and other environmental factors." He also sought an opportunity to demonstrate that the homicide did "not reflect 'irreparable corruption,'" including a determination of whether he was "sufficiently rehabilitated . . . to rejoin society." (Quoting Miller, 567 U.S. at 480-81.)

The State argued that although defendant's youth was not a statutory mitigating factor when defendant was sentenced, the trial court had considered the fact that defendant was sixteen when he committed the murder. It contended that the Miller factors were not implicated because defendant was not sentenced

to life without parole or its functional equivalent since he will be eligible for parole in 2026.[3] The State asserted that defendant's sentence is not illegal.

In the judge's February 5, 2018 decision denying the motion, he noted that defendant presented materials detailing the rehabilitative efforts he had made while incarcerated, including graduating from high school, completing several programs, obtaining a patent, forming an intellectual property holding company, and working in the prison's law library. Defendant committed no disciplinary infractions while in prison.

The court distinguished Zuber, which involved much longer sentences and periods of parole ineligibility.[4] It also noted that sentencing a juvenile offender to life without parole was not prohibited by Graham, Miller, or Zuber if the "crime reflects irreparable corruption." (Quoting Zuber, 227 N.J. at 451.)

---

[3] It appears that defendant will be eligible for parole in July 2026 since he was sentenced on March 27, 1998 and received 612 days of jail credit. At that point, defendant will be forty-seven years old and will have served thirty years of his sentence.

[4] Defendant Ricky Zuber was sentenced to an aggregate 150-year term with a 75-year period of parole ineligibility, which made him eligible for parole at age 92. Zuber, 227 N.J. at 428. Defendant James Comer was sentenced to an aggregate 75-year term with a 68.25-year period of parole ineligibility, which made him eligible for parole at age 85. Id. at 430, 433, 448.

The court recognized that defendant "may be incarcerated long past his fifties" because he may not be released when initially eligible for parole but "will still have [that] opportunity." The court declined to "speculate as to whether [d]efendant will or will not be denied parole at a future date"; but instead should focus "on the actual time" he will serve before he is eligible for parole. Furthermore, "[i]f [d]efendant is denied parole, despite the many rehabilitative efforts he's made[,] . . . then perhaps at that time [d]efendant would be able to demonstrate that his sentence would be the functional equivalent of life without parole." This appeal followed.

While this appeal was pending, counsel was appointed to represent defendant and moved for leave to submit supplemental material on parole statistics. We denied the motion and reconsideration of our decision, concluding that the supplemental materials were not "probative of the legal issues presented on appeal."

Defendant raises the following points in his self-represented brief, which we have edited for brevity:

> POINT I
>
> DEFENDANT'S THIRTY-TO-LIFE SENTENCE QUALIFIES AS "LENGTHY"; ACCORDINGLY, PURSUANT TO THE STANDARD SET FORTH IN [ZUBER, 227 N.J. at 451], DEFENDANT WAS

ENTITLED TO THE MILLER PROTECTIONS, IN WHICH EVENT RESENTENCING IS REQUIRED.

POINT II

ASSUMING, ARGUENDO, THAT [ZUBER] APPLIES ONLY TO SENTENCES AMOUNTING TO LIFE WITHOUT PAROLE, THE ZUBER/MILLER PROTECTIONS SHOULD BE EXTENDED TO THIRTY-TO-LIFE SENTENCES UNDER THE NEW JERSEY CONSTITUTION IN LIGHT OF OUR SOCIETY'S EVOLVING STANDARDS OF DECENCY TOWARD ADULT-PROSECUTED JUVENILES.

POINT III

GIVEN DEFENDANT'S INTERVENING MATURITY AND REHABILITATION, THE TRIAL COURT DURING RESENTENCING MUST REEVALUATE THE AGGRAVATING AND MITIGATING FACTORS (INCLUDING THE MILLER CRITERIA) AND MUST IMPOSE THE LOWEST TERM-OF-YEARS SENTENCE ALLOWED BY LAW.

Counsel raises the following additional points:

POINT I

BECAUSE THE SENTENCING COURT DID NOT PROPERLY CONSIDER THE MITIGATING ASPECTS OF YOUTH IN DETERMINING WHETHER MR. TORMASI WAS ONE OF THE RARE JUVENILE OFFENDERS WHOSE CRIMES REFLECT IRREPARABLE CORRUPTION, A RESENTENCING HEARING IS NECESSARY.

POINT II

THE MOTION COURT ERRED IN RELYING ON THE FACT THAT THERE WAS A THEORETICAL POSSIBILITY OF PAROLE IN DENYING A MILLER HEARING BECAUSE IN NEW JERSEY THE MERE ELIGIBILITY FOR PAROLE DOES NOT PROVIDE A MEANINGFUL AND REALISTIC OPPORTUNITY FOR RELEASE, BASED UPON DEMONSTRATED MATURITY AND REHABILITATION, AS MANDATED BY ZUBER, MILLER, THE EIGHTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE 1, ¶ 12 OF OUR STATE CONSTITUTION.

A. United States Supreme Court Precedent.

B. The Zuber Opinion and Our State Constitution.

C. Mere Eligibility for Parole Does Not Amount to a Meaningful Opportunity for Release Pursuant to Graham v. Florida Because Regardless of Evidence that He Was Not the Rare Incorrigible Youth, and that He Has Engaged in Rehabilitation, Mr. Tormasi May Never Be Released Without Judicial Intervention.

1. The Parole Board Regularly Contravenes the Intentions and Expectations of Sentencing Judges and, therefore, Parole Eligibility Does Not Satisfy the Sentencing Requirements Set Forth in Graham, Miller, or Zuber or Their Progeny.

A-3534-17T4

2. The Parole Board's Decision-Making Process Is Statutorily and Constitutionally Deficient for Purposes of Setting Sentence on a Juvenile and, therefore, Eligibility for Parole Cannot Serve as a Meaningful Opportunity for Release.

## I.

"[A]n illegal sentence is one that 'exceeds the maximum penalty . . . for a particular offense' or a sentence 'not imposed in accordance with law.'" State v. Acevedo, 205 N.J. 40, 45 (2011) (quoting State v. Murray, 162 N.J. 240, 247 (2000)). "That includes a sentence 'imposed without regard to some constitutional safeguard.'" Zuber, 227 N.J. at 437 (quoting State v. Tavares, 286 N.J. Super. 610, 618 (App. Div. 1996)). "A defendant may challenge an illegal sentence at any time." Ibid. (citing R. 3:21-10(b)(5); Acevedo, 205 N.J. at 47 n.4).

Determining the appropriate sentencing range, mandatory terms, and parole eligibility for crimes is exclusively the province of the Legislature. See State v. Des Marets, 92 N.J. 62, 80-81 (1983); State v. Lagares, 247 N.J. Super. 392, 400 (App. Div. 1991), aff'd, 127 N.J. 20 (1992). The sentencing range for purposeful or knowing murder at the time defendant was sentenced was thirty years to life, subject to a thirty-year period of parole ineligibility. N.J.S.A.

2C:11-3(b)(1).[5] Defendant's sentence does not exceed the maximum penalty for murder.

Nevertheless, a statutorily permissible sentence may still violate the constitutional prohibition against cruel and unusual punishment. In Miller, the Supreme Court declared that mandatory life imprisonment without parole imposed upon a juvenile sentenced as an adult violates the Eighth Amendment. 567 U.S. at 479. In so ruling, the Court built upon prior decisions, which had established that "children are constitutionally different from adults for purposes of sentencing" because they "have diminished culpability and greater prospects for reform," and thus "are less deserving of the most severe punishments." Id. at 471 (quoting Graham, 560 U.S. at 68) (holding life imprisonment without parole for a juvenile convicted of a non-homicide offense unconstitutional).

The Miller Court found that a mandatory life sentence without parole for a juvenile convicted of homicide:

> [1] precludes consideration of [the juvenile's] chronological age and its hallmark features -- among them, immaturity, impetuosity, and failure to appreciate risks and consequences.
>
> [2] It prevents taking into account the family and home environment that surrounds him -- and from which he

___

[5] Prior to 2001, NERA did not apply to murder. See, e.g., State v. Allen, 337 N.J. Super. 259, 271-74 (App. Div. 2001).

cannot usually extricate himself -- no matter how brutal or dysfunctional.

[3] It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him.

[4] Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth -- for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys.

[5] And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it.

[Id. at 477-78.]

We refer to these five aspects of mandatory sentencing as "the Miller factors."

The Miller Court did not preclude the possibility of a life sentence for a juvenile convicted of homicide but reaffirmed and expanded its determination in Graham that a life sentence may not be mandatory and should be "uncommon" given a juvenile's "diminished culpability and heightened capacity for change." Id. at 479. In the "rare" situation where the juvenile's "crime reflects irreparable corruption" or incorrigibility, the court may impose a life sentence. Id. at 479-80 (quoting Roper, 543 U.S. at 573).

In Graham, the Court determined that a sentencing court may not make the determination "at the outset" that the juvenile will forever pose a risk to society. 560 U.S. at 75. Instead, the juvenile must have "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." Ibid. The Court left the "means and mechanisms for compliance" with its decision to the States. Ibid.

In Montgomery v. Louisiana, the Court determined that Miller was entitled to retroactive effect and held that where a sentence was imposed contrary to Miller, the constitutional infirmity could be remedied by a resentencing or consideration for parole. 577 U.S. ___, ___, 136 S. Ct. 718, 733-36 (2016). The Court explained: "Allowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity—and who have since matured—will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment." Id. at 736.

In Zuber, the Court extended the holding of Miller to juveniles who receive a "lengthy, aggregate sentence that amounts to life without parole." 227 N.J. at 450. The Court held that when a juvenile is tried as an adult and is subject to a lengthy sentence that is "the practical equivalent of life without parole," the sentencing court must consider the Miller factors in addition to the statutory

aggravating and mitigating sentencing factors.  Zuber, 227 N.J. at 429, 445-47, 450.  The Court did not preclude the possibility of a de facto life term but instructed that few juveniles should receive one because "it is only the 'rare juvenile offender whose crime reflects irreparable corruption.'"  Id. at 451 (quoting Miller, 567 U.S. at 479-80).

The Court did not define a de facto life term by any specific length and rejected the use of life-expectancy tables in deciding whether a lengthy term is effectively a life term.  Id. at 450.  The Court instructed sentencing courts to consider "the real-time consequences of the aggregate sentence" and held that the aggregate terms at issue in that consolidated case—110 years with a 55-year parole-bar and 75 years with a 68-year and 3-month parole-bar—were the functional equivalent of life terms.  Id. at 447, 449, 453.

The Court suggested the possibility that a lawfully imposed sentence of life, or the functional equivalent of life, may later be rendered unconstitutional by subsequent facts that establish reform and rehabilitation before expiration of the parole-bar.  Id. at 451-52.  A defendant receiving such a sentence might "ask the court to review factors that could not be fully assessed when he was originally sentenced—like whether he still fails to appreciate risks and

consequences, or whether he may be, or has been, rehabilitated." Id. at 452 (citing Miller, 567 U.S. at 477).

The Zuber Court invited the Legislature to examine this issue, noting that "Graham left it to the States 'to explore the means and mechanisms' to give defendants 'some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.'" Id. at 452 (quoting Graham, 560 U.S. at 75). In the intervening years, the Legislature has considered this issue but has not yet enacted any law on point.[6] We place little value on legislative proposals that are not enacted into law. See In re Adoption of N.J.A.C. 5:25-1.1, 266 N.J. Super. 625, 632 n.1 (App. Div. 1993) ("pending legislation is of little persuasive effect, and is not proof of prior legislative intent").

Defendant asks this court to extend the protections adopted in Zuber and Miller to all "lengthy sentences" imposed on a juvenile offender that are subject to a thirty-year parole-bar. We decline to do so.

---

[6] The Legislature has considered the issue on several occasions. See S. 2591/A. 4372 (2020) (permitting a juvenile sentenced to an aggregate term of thirty years or more to request a resentencing after serving at least twenty years of the sentence); A. 1233 (2018) (allowing a juvenile sentenced to twenty years or more without parole to petition for resentencing ten years after conviction and to be eligible for parole after twenty years of incarceration); and S. 3079 (2017), reintroduced as, S. 428 (2018) (allowing a juvenile sentenced to thirty years or more without parole to petition for review of the sentence after thirty years of incarceration if convicted of murder and twenty years for all other crimes).

In State v. Bass, we addressed the type of sentence that may qualify as a de facto life term. 457 N.J. Super. 1 (App. Div. 2018), certif. denied, 238 N.J. 364 (2019). We held that an aggregate term of life with a thirty-five-year parole-bar was not the functional equivalent of a life sentence, and thus, the defendant was not entitled to resentencing under Zuber, even though the sentencing court had not considered the Miller factors when it imposed the sentence. Id. at 13-14. We further held that any rehabilitative actions the defendant had undertaken while incarcerated were matters for the parole board to consider and did not render the sentence unconstitutional. Id. at 14. We explained:

> [D]efendant's sentence is not illegal because he now claims to be rehabilitated as a result of his incarceration. We do not minimize defendant's efforts to rehabilitate himself . . . . However, consideration of these accomplishments is exclusively the province of the parole board and not a means of collateral attack on defendant's sentence—which has been affirmed on direct appeal.
>
> [Ibid. (citation omitted).]

As we have noted, defendant will be eligible for parole in mid-2026, when he will be forty-seven years old. Defendant's mandatory thirty-year parole-bar is five years shorter than the parole bar in Bass and decades shorter than those in Zuber, 227 N.J. at 429. A life sentence subject to a thirty-year parole-bar is far from a de facto life sentence without parole when imposed on a juvenile

17

offender, who will be eligible for release by age forty-seven. Defendant's sentence does not amount to the functional equivalent of life without parole. Accordingly, resentencing is not required by Zuber.

We do not decide here in the abstract what would constitute an appropriate amount of time in prison to justify a "return to court" to demonstrate that defendant has sufficiently reformed himself to a degree that serving his original sentence in full is no longer constitutional under the Eighth Amendment. See Zuber, 227 N.J. at 451-52. That said, we discern no reason to depart from our decision in Bass.

II.

While this appeal was pending, N.J.S.A. 2C:44-1(b) was amended effective October 19, 2020, to add the defendant's youth (i.e., less than twenty-six years of age) to the statutory mitigating sentencing factors. N.J.S.A. 2C:44-1(b)(14). Unlike mitigating factor thirteen, N.J.S.A. 2C:44-1(b)(13), mitigating factor fourteen does not require a finding that the defendant was substantially influenced by another; it only requires a finding that "[t]he defendant was under 26 years of age at the time of the commission of the offense." N.J.S.A. 2C:44-1(b)(14).

Although defendant argues that the motion court inadequately considered his youth at the time the murder was committed, he does not argue that the amendment should be applied retroactively to this case. In any case, the new sentencing factor would not provide a basis for relief because the factor is part of the weighing process, which relates to the issue of excessiveness, not legality. State v. Hess, 207 N.J. 123, 145 (2011); State v. Acevedo, 205 N.J. 40, 46-47 (2011). Claims that a sentence "within the range permitted by a verdict" is excessive must be raised on direct appeal, Hess, 207 N.J. at 145, and "are not cognizable . . . under the present Rule 3:21-10(b)(5)," Acevedo, 205 N.J. at 47. Thus, even if the Legislature intended the youth factor to apply to sentences imposed long ago and affirmed on direct appeal, it would not provide a basis to render the sentence illegal or unconstitutional.

### III.

Defendant sought to supplement the record with parole data and other materials to establish that he will likely be denied parole and receive a future eligibility term, resulting in his serving substantially more than thirty years before release. We denied the motion and reconsideration for several reasons.

Both federal and State precedent on cruel and unusual punishment support a finding that the possibility of parole provides a meaningful opportunity for

release. In <u>Bass</u> we approved the parole process in relation to <u>Zuber</u> cases by holding that an otherwise lawful sentence under <u>Zuber</u> was not rendered unconstitutional because the defendant had taken steps to rehabilitate himself. <u>Bass</u>, 457 N.J. Super. at 13-14. Rather, those steps were matters for the Parole Board to consider. <u>Ibid.</u> Additionally, <u>Zuber</u> implicitly approves of the parole process, as it cited <u>Montgomery</u> with approval, and there the Court held that a meaningful opportunity for release could be addressed through a resentencing or parole. <u>Zuber</u>, 227 N.J. at 446 (discussing <u>Montgomery</u>, 136 S. Ct. at 736). Thus, the opportunity for parole provides a meaningful opportunity at release for purposes of the Eighth Amendment.

Moreover, "[t]he granting of parole is within the discretion of the Board, and we must give great deference to the expertise of the Board in its parole decisions and not upset them unless it clearly and convincingly appears that the Board has abused its discretion." <u>Trantino v. N.J. State Parole Bd.</u>, 296 N.J. Super. 437, 470 (1997) (citing <u>State v. Lavelle</u>, 54 N.J. 315 (1969)). We do not substitute our judgment for that of the full Parole Board. <u>Acoli</u>, 224 N.J. at 230-31.

Based "on the diverse backgrounds of its members, the Parole Board makes 'highly predictive and individualized discretionary appraisals.'" <u>Acoli v.</u>

N.J. State Parole Bd., 224 N.J. 213, 222 (2016) (quoting Beckworth v. N.J. State Parole Bd., 62 N.J. 348, 359 (1973)). In undertaking that process, the Parole Board is required to consider the twenty-three non-exclusive factors enumerated in N.J.A.C. 10A:71-3.11(b), including the results of an "objective risk assessment instrument," N.J.A.C. 10A:71-3.11(b)(23).

The Parole Board's decision is based on its assessment of the regulatory factors as they exist at the time an inmate becomes eligible for parole. If defendant is denied parole, he has the right to appeal that decision to this court. Acoli, 224 N.J. at 232. "[T]hat would be the appropriate time" for this court to consider whether the Parole Board adequately considered the rehabilitation and maturity defendant achieved while in prison, and if "judicially ordered parole of a convicted murderer might be in order. However, that possibility must await completion of the parole process in its entirety." Ibid.

Defendant's contention that he will likely be denied parole in the future is entirely speculative. We decline to consider defendant's conjecture that the Parole Board will deny him parole because it frequently does so when convicted murderers first become eligible. Moreover, the fact that other inmates convicted of murder have been initially denied parole is presumably based on an individualized consideration of the regulatory factors as applied to those

21

inmates.  Accordingly, data showing the frequency of parole denial is not probative.

Defendant further argues that "mere eligibility for parole does not amount to a meaningful opportunity for release" under Graham because "[t]he Parole Board regularly contravenes the intentions and expectations of judges and, therefore, parole eligibility does not satisfy the sentencing requirements set forth in Graham, Miller, or Zuber or their progeny."  He claims that the Parole Board "has become a powerful sentencing entity with unfettered power to 'overrule' sentencing decisions, thereby depriving inmates of a meaningful opportunity for release and usurping the power of sentencing judges."

Defendant notes that even though the 1997 Parole Act creates a presumption that inmates "shall be released" on parole, N.J.S.A. 30:4-123.53(a), the Parole Board "could still deny him release" despite evidence of his rehabilitation.  Relying on an unpublished opinion[7] and the dissent in Acoli v. N.J. State Parole Bd., 462 N.J. Super. 39, 67, 74 (App. Div. 2019) (Rothstadt,

---

[7]  "No unpublished opinion shall constitute precedent or be binding upon any court."  R. 1:36-3.  Unreported decisions "serve no precedential value, and cannot reliably be considered part of our common law."  Trinity Cemetery v. Wall Twp., 170 N.J. 39, 48 (2001) (Verniero, J., concurring).

J., dissenting), defendant contends that "good behavior during incarceration that demonstrates rehabilitation offers no assurance of release."

Defendant further argues that the Parole Board's decision making-process is statutorily and constitutionally deficient because "[n]o statute, case law, or administrative code provision demands that the Parole Board consider the court-accepted brain science that 'children are constitutionally different' and 'not deserving of the most severe punishments." (Quoting Zuber, 227 N.J. at 447-48.) We are unpersuaded by these additional arguments.

We note that in response to a petition for rulemaking, the Parole Board has proposed amending N.J.A.C. 10A:71-3.11 to add a new subsection (b)(24), that reads, "[s]ubsequent growth and increased maturity of the inmate during incarceration," as an additional factor to be considered at parole hearings of adult inmates. 52 N.J.R. 1159(a) (June 1, 2020). In the accompanying summary the Parole Board noted, however, "that the maturity developed by an offender over the length of incarceration has been a factor taken into consideration by Board members in the assessment of an offender for parole release." Ibid.

While the proposed amendment has not yet been adopted, the factors set forth in N.J.A.C. 10A:71-3.11(b) are not exclusive. Instead, "[p]arole decisions shall be based on all pertinent factors, including material supplied by the inmate

and reports and material which may be submitted by any persons or agencies which have knowledge of the inmate." N.J.A.C. 10A:71-3.11(a). Moreover, the Parole Board is already required to consider the inmate's: "[a]djustment to . . . incarceration," N.J.A.C. 10A:71-3.11(b)(4); "[p]articipation in institutional programs," N.J.A.C. 10A:71-3.11(b)(8); "[d]ocumented changes in attitude toward self or others," N.J.A.C. 10A:71-3.11(b)(11); and "[m]ental and emotional health," N.J.A.C. 10A:71-3.11(b)(13).

That said, the additional issues raised by counsel are not ripe. Defendant is ineligible for parole because he is still serving a thirty-year period of parole ineligibility. "We will not render advisory opinions or function in the abstract. Nor will we decide a case based on facts which are undeveloped or uncertain." N.J. Ass'n for Retarded Citizens v. N.J. Dep't of Human Servs., 89 N.J. 234, 241 (1982) (citations omitted).

If defendant is eventually denied parole and receives a future eligibility term, he may appeal that decision and challenge the constitutionality of the statutory and regulatory framework governing parole at that time. See Acoli, 224 N.J. at 223 ("It is settled law that the parole of an inmate may come about through appellate review of the parole process when that process has been completed . . . .").

24

To date, defendant's sentence has been declared constitutional by a trial judge and this court. If he is denied parole, he may appeal. If he serves a substantial period in prison due to a parole denial or denials, he may even have a basis to file a motion to correct an illegal sentence based on "factors that could not be fully assessed when he was originally sentenced." Zuber, 227 N.J. at 452. But at this time, his sentence is legal and his speculative claims regarding the likelihood of not being paroled do not change that.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3534-17T4