# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2238-20

F.R.M.,

    Plaintiff-Respondent,

v.

J.V.,

    Defendant-Appellant.

_____

Submitted November 30, 2021 – Decided March 14, 2022

Before Judges Currier and Smith.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FV-12-1342-21.

Fetky & Petty, LLC, attorneys for appellant (Jonathan Petty, of counsel and on the brief).

Respondent has not filed a brief.

PER CURIAM

After a trial in the Family Part, defendant appeals a final restraining order (FRO) issued against him. For the reasons set forth below, we reject his arguments on appeal and affirm.

I.

Plaintiff is the twenty-one-year-old stepdaughter of defendant, and she and defendant once resided together, along with plaintiff's mother and two other sisters. Some years prior, Division of Child Protection and Permanency (the Division) ordered defendant to leave the home as a result of its investigation into allegations that he exposed himself to plaintiff while she was a minor.[1] The Division order prohibited defendant from having any contact with plaintiff until her eighteenth birthday.

In December 2020, when plaintiff was twenty years old, defendant showed up at the family home, where he no longer resided. He tapped on her bedroom window multiple times on different days. Defendant was in the vicinity of plaintiff's home because he was working as a handyman at a neighboring property. While the window tapping incidents were taking place that December, plaintiff discovered in her cellphone messages photos of naked women sent to

---

[1] The record does not show whether defendant faced any criminal charges as a result of his alleged act.

A-2238-202238-20

her phone in March 2020. While defendant denied sending the message containing the photos personally, the message metadata confirmed the photos were sent from defendant's cell phone, which had been blocked by her. [2]

Plaintiff obtained a temporary restraining order (TRO) alleging harassment, stalking, and cyber-harassment, and a trial on the issuance of an FRO took place. The parties testified, and the court rendered a comprehensive oral decision in which it found plaintiff credible. The court rejected as not credible defendant's testimony about when and why he was tapping on plaintiff's window, and about how lewd photographs ended up being transmitted from his phone to plaintiff's.

The trial court made additional findings: that there was a Division order barring contact between defendant and plaintiff because defendant was accused of exposing himself to plaintiff; that plaintiff had undergone counseling through the Division since the incident in which defendant allegedly exposed himself to her; that defendant was her stepfather and in December 2020 had periodically tapped on her bedroom window and other first floor bedroom windows while plaintiff and her sisters were at home and their mother was at work; and that the

---

[2] The record shows plaintiff had previously blocked messages coming from her stepfather's cellphone.

A-2238-202238-20

tapping was so frequent that plaintiff's sister, defendant's biological daughter, would go outside to tell defendant to leave.

The court found defendant's window tapping, specifically in light of the no-contact order history between plaintiff and defendant, was a violation of N.J.S.A. 2C:33-4(c), and therefore a predicate act under the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35.

The court also made findings regarding the lewd instant message sent to plaintiff's cell phone. The court viewed the message, weighed the parties' testimony, and found defendant sent the message. The court concluded that the pictures contained in the message were lewd and indecent, and found that defendant's actions constituted cyber-harassment, N.J.S.A. 2C:33-4.1(a)(2). The judge dismissed the stalking count.

The judge next conducted a Silver[3] analysis, concluding that the facts in the record supported issuance of an FRO.

Defendant appeals, arguing that the trial judge erred in: (1) taking judicial notice of facts contained in a court document, namely the Division no-contact order; and (2) taking judicial notice of how the cellphone instant messaging application worked and then admitting defendant's lewd messages without a

---

[3] Silver v. Silver, 387 N.J. Super. 112, 123 (App. Div. 2006).

4

proper evidentiary foundation.  Because defendant raises his arguments for the first time, we review them under the plain error standard.  Twp. of Manalapan v. Gentile, 242 N.J. 295, 304-05 (2020).

II.

Generally, our scope of review of Family Part orders is limited.  Cesare v. Cesare, 154 N.J. 394, 411 (1998).  We owe substantial deference to the Family Part's findings of fact because of its special expertise in family matters.  Id. at 413 (citations omitted).  Deference is especially appropriate in bench trials when the evidence is "largely testimonial and involves questions of credibility."  Id. at 412 (citations omitted).  A trial judge who observes witnesses and listens to their testimony is in the best position to "make first-hand credibility judgments about the witnesses who appear on the stand . . . ."  N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008).  We will not disturb a trial court's factual findings unless "they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice."  Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)).  However, we do not accord such deference to legal conclusions and review such conclusions de novo.  Thieme v. Aucoin-Thieme, 227 N.J. 269, 283 (2016).

A-2238-202238-20

To determine whether the entry of an FRO is appropriate, the court must first "determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19[(a)] has occurred." Silver, 387 N.J. Super. at 125.

Under N.J.S.A. 2C:33-4(c):

> [A] person commits a petty disorderly persons offense [of harassment] if, with purpose to harass another, he:
>
> . . . .
>
> c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.

"'A finding of a purpose to harass may be inferred from the evidence presented' and from common sense and experience." H.E.S. v. J.C.S., 175 N.J. 309, 327 (2003) (quoting State v. Hoffman, 149 N.J. 564, 577 (1997)). Analyzing subsection (c), our Supreme Court has construed "'any other course of alarming conduct' and 'acts with purpose to alarm or seriously annoy' as repeated communications directed at a person that reasonably put that person in fear for [their] safety or security or that intolerably interfere with that person's reasonable expectation of privacy." State v. Burkert, 231 N.J. 257, 284-85 (2017).

A-2238-202238-20

N.J.S.A. 2C:33-4.1(a)(2) establishes the elements of cyber-harassment pertinent for this case:

> a. A person commits the crime of cyber-harassment if, while making a communication in an online capacity via any electronic device or through a social networking site and with the purpose to harass another, the person:
>
> . . . .
>
> (2) knowingly sends, posts, comments, requests, suggests, or proposes any lewd, indecent, or obscene material to or about a person with the intent to emotionally harm a reasonable person or place a reasonable person in fear of physical or emotional harm to his person . . . .

"The cyber-harassment statute limits the [regulation] of speech mostly to those communications that threaten to cause physical or emotional harm or damage." Burkert, 231 N.J. at 274.

If the court finds defendant committed a predicate act of domestic violence, then the second inquiry "is whether the court should enter a restraining order that provides protection for the victim." Silver, 387 N.J. Super. at 126. While the second inquiry "is most often perfunctory and self-evident, the guiding standard is whether a restraining order is necessary, upon an evaluation

7

of the factors set forth in N.J.S.A. 2C:25-29[(a)](1) to -29[(a)](6), to protect the victim from an immediate danger or to prevent further abuse." Id. at 127.

## III.

Defendant argues that it was improper for the FRO court to take judicial notice of the reason for the Division no-contact order when the underlying facts of the order were, defendant argues, contested. We disagree. The court did not solely rely on the prior no-contact order to reach its findings. At trial, defendant admitted he went to plaintiff's home to tap on the windows, and that he had been barred from contact with plaintiff "about three years" prior to the window tapping incident. Plaintiff and her sister saw and heard defendant tapping on the bedroom windows numerous times while their mother was away at work. Because of these incidents and her prior traumatic experience with defendant, she continued to fear him.

We defer to the trial court's findings where, as here, the evidence is "largely testimonial and involves questions of credibility." Cesare, 154 N.J. at 412. The trial judge was in the "best position to 'make first-hand credibility judgments' about the witnesses who appear on the stand . . . ." E.P., 196 N.J. at 104. There was ample credible evidence in the record for the court to find the

predicate act of harassment without taking judicial notice of any fact that may have been in dispute, and we discern no unjust result.

Defendant next argues that the trial judge should not have considered the message on plaintiff's cellphone for two reasons. First, he argues, it was improper for the court to take judicial notice of certain technical aspects regarding how instant messages are sent and received. Second, because an insufficient foundation was laid, he contends that the lewd message should not have been admitted into evidence.

We are satisfied that judicial notice did not play a role in the trial court making its findings. See N.J.R.E. 201. Plaintiff and her mother discovered messages containing lewd photos in a blocked file on plaintiff's phone. When they opened the message, they learned it was labeled as being sent from defendant's phone. The digital label included his cellphone number and a photo of defendant's biological daughter, plaintiff's half-sister. Defendant testified that he did not send the message, however the judge found defendant not credible and rejected his testimony.

To admit a physical object into evidence, in this case, a cellphone containing a screenshot of the lewd photos, "the proponent must present evidence sufficient to support a finding that the item is what its proponent

claims." N.J.R.E. 901. "The rule 'does not require absolute certainty or conclusive proof' —only 'a prima facie showing of authenticity' is required." State v. Tormasi, 443 N.J. Super. 146, 155 (App. Div. 2015) (quoting State v. Mays, 321 N.J. Super. 619, 628 (App. Div. 1999)).

The record shows sufficient credible evidence to make a prima facie showing of authenticity. Tormasi, 443 N.J. Super. at 155. In admitting the phone into evidence, and then weighing it in conjunction with the trial testimony, the trial court followed "the better practice." Id. at 156-57. The court found the predicate act of cyber-harassment, and we conclude in turn there was sufficient credible evidence in the record to affirm the trial court on this issue.

Turing to the second inquiry under Silver, the sole question remaining "is whether the court should enter a restraining order that provides protection for the victim." Silver, 387 N.J. Super. at 126. "[T]he guiding standard is whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29[(a)](1) to -29[(a)](6), to protect the victim from an immediate danger or to prevent further abuse." Id. at 127. The trial court found that plaintiff remained frightened of defendant and had returned to therapy because of these incidents. The court properly applied its findings to both prongs of the Silver standard in issuing an FRO, and we discern no error.

10

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2238-202238-20