**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3312-22

IN THE MATTER OF THE
APPLICATION OF P.B.R.
ENTERTAINMENT, LLC, d/b/a
MONSTER MINI GOLF
FOR AN AMUSEMENT GAMES
LICENSE.

_____

Argued April 23, 2024 – Decided May 9, 2024

Before Judges Natali and Haas.

On appeal from the New Jersey Department of Legalized Games of Chance Control Commission, Division of Consumer Affairs.

Jeffrey Peter Resnick argued the cause for appellant P.B.R. Entertainment, LLC d/b/a Monster Mini Golf (Sherman, Silverstein, Kohl, Rose & Podolsky, attorneys; Jeffrey Peter Resnick, on the briefs).

Nancy Costello Miller argued the cause for respondent Legalized Games of Chance Control Commission (Matthew J. Platkin, Attorney General, attorney; Janet Greenberg Cohen, Assistant Attorney General, of counsel; Nancy Costello Miller, Deputy Attorney General, on the brief).

PER CURIAM

Appellant P.B.R. Entertainment, LLC, d/b/a Monster Mini Golf, appeals the May 22, 2023 final agency decision of the Legalized Games of Chance Control Commission (Commission) denying its application for an amusement games license due to its failure to establish it qualified as an "amusement park" under the Amusement Games Licensing Law, N.J.S.A. 5:8-100 to -103, and specifically the statutory requirement it provide "food and merchandise concessions in permanent structures." See N.J.S.A. 5:8-101. We vacate the Commission's decision and remand for it to make additional factual findings and legal conclusions on two issues: first, whether the pre-packaged foods appellant intends to offer constitute food for purposes of N.J.S.A. 5:8-101, and second, whether appellant's proposed food concessions constitute permanent structures satisfying the statutory requirement.

## I.

Appellant operates an entertainment facility within a building in Cherry Hill which contains, among other attractions, an eighteen-hole glow in-the-dark miniature golf course that it describes as "filled with amazing special effects, state-of-the-art arcade games, and incredible monster-themed décor." It operates arcade games on a "fixed ticket" or "win-every-time" basis, which as the Commission explains, does not require an amusement license as the games

A-3312-22

do not involve chance or skill but instead are essentially purchases. Appellant also offers "bowling lanes and other fun attractions, including virtual reality." At all relevant times, appellant's facility offered only drinks and pre-packaged food distributed from vending machines.

Appellant sought to expand its business to include amusement-type games of chance and accordingly, applied for licenses with the municipality and the Commission as required under N.J.S.A. 5:8-102. In December 2019, the Township of Cherry Hill adopted a resolution granting appellant's application for a license to operate amusement games as a recognized amusement park as permitted by the Amusement Games Licensing Law pursuant to N.J.S.A. 5:8-115. Prior to the Township's approval, the Commission also investigated appellant's qualifications as part of its separate licensing process. Specifically, Commission employees photographed appellant's facility, interviewed witnesses, including Robert Lister, one of appellant's principals, and prepared a report.

According to the Commission's records, its investigator informed Lister that the applicable "regulations require food concessions in their permanent structure . . . as part of an amusement park." In response, Lister initially informed the investigator that he did not want "food concessions on the

premise[s]." The Commission considered the report at a scheduled meeting where Lister addressed the Commission's members during the public comment portion and inquired if the installation of various food preparation equipment such as a pretzel warmer, cookie maker, hot dog roller and soda machine would satisfy the Commission's requirement for a permanent food concession.

The Commission took the matter under advisement and considered it at a subsequent meeting where it denied appellant's application because it did not satisfy the statutory definition of an "amusement park" as the "food concessions described" did not meet the "requirement that food concessions be in a permanent structure as contemplated by the Amusement Games Licensing Law." In response, Lister submitted two letters requesting the Commission reconsider its decision. As relevant to the issues before us, Lister acknowledged the Commission denied appellant's license application because the aforementioned "equipment was not considered permanent," but disagreed with that conclusion because the "machines (soda fountain & cookie oven) will be attached to the counters, therefore they will be permanent fixtures." After considering appellant's submissions, the Commission denied its reconsideration request at its next scheduled meeting.

Undeterred, in April 2022, appellant renewed its request for an amusement games license. Commission staff conducted an additional inspection a month later in which they determined appellant still had not installed any food concessions. Lister informed the Commission's investigator that although he intended to purchase and install a pretzel oven and hot dog roller, he "did not want to make the commitment of adding the food concessions until approval of the license was granted."

In response, the investigator informed Lister he should provide a description of the location of the concessions, details regarding the equipment he intended to purchase, and any proposed menu of the food he intended to sell. Shortly thereafter appellant provided the requested information which included pictures of the proposed pretzel and cookie oven, hot dog roller, fountain machine, proposed menu, as well as photographs of vending machines that would also offer pre-packaged food.

The Commission again considered the investigator's report at a public meeting. In order to understand fully appellant's revised proposal, the Commission requested it provide further information regarding the location of the concession area and also sought confirmation the plans met local and State health laws.

A-3312-22

Appellant provided its proposed floor plan and specifically stated it would obtain both the equipment detailed and approval from the local and State health officials. Because it had previously been denied an amusement games license and did not want to incur the costs related to purchasing equipment and obtaining approvals from the relevant health departments if it would again be denied, appellant requested the Commission grant its license prior to construction commencing with respect to its proposed food and beverage area. The Commission determined, after having considered the additional information and appellant's representation, that it would indeed grant appellant a license and recognize its facility as an amusement park based on its prior representations.

Instead of completing the equipment purchases and obtaining health department approvals, appellant later wrote to the Commission in March 2023 to inform it that it discovered the costs attendant to installing the equipment were excessive. In particular, appellant explained in order to approve its proposed food and beverage area, the State Board of Health mandated installation of two specific sinks requiring commercial plumbing, which would interrupt its business and cause a financial hardship. Instead, it proposed providing only pre-packaged food and bottled drinks, which would not require sinks.

6

Appellant specified the food it would offer included "pretzels, cookies, chips, crackers, popcorn, candy, protein bars, brownies, and muffins," in a layout "the same as previously presented" with "all items . . . on the counter in plain view for purchase." The Commission again considered appellant's request at a scheduled meeting where Lister and his wife spoke and reaffirmed their written correspondence seeking to "modify the [Commission's] conditions contained in the approval of its premises as an amusement park" based on the Board of Health's requirement that they install certain sinks and plumbing alterations which would render the construction "cost prohibitive."

The Commission rejected appellant's request to modify the conditions attendant to its earlier approval and specifically noted those conditions "were the minimum that would support approval." The Commission memorialized its decision in a May 22, 2023 letter, in which it explained it would not "recognize the sale of solely prepackage[d] foods as satisfying" the statutory definition of an amusement park. This appeal followed.

Before us, appellant's arguments center around its disagreement with the manner in which the Commission interpreted and applied the applicable statutory language. It argues "the sale of solely pre-packaged food and beverages satisfies the statutory requirements for the definition of Amusement

7

Part [sic] found at N.J.S.A. 5:8-101" and claims that under the "plain and clear wording of the statute, food simply needs to be available."

According to appellant, "[t]he statute does not provide that pre-packaged food invalidates an entity's status as an amusement park." It further contends the Commission's determination that the "sale of solely pre[-]packaged food does not satisfy the food element of the statutory definition" is contrary to how "food" is defined in various other statutory provisions, including N.J.S.A. 2C:21-7.2(b), N.J.S.A. 56:8-62 and -99.

Appellant also argues the Commission applied a crabbed interpretation to the phrase "food concessions," contending "food concessions can include any one of hundreds of items" including "foods found at ballparks, carnivals, or arenas," and may be "packaged or unpackaged." It maintains if the Legislature or the Commission desired, through regulation, to limit the phrase "food concessions" it could have, but did not. Finally, appellant asserts we should not defer to the Commission's decision because it failed to create a "record or understanding" explaining the basis for its determination, leaving appellant "to explain only why it believes it is entitled to that license, as opposed to specifically addressing the Commission's basis for its denial."

8

In requesting we affirm, the Commission contends its decision was consistent with the plain language of N.J.S.A. 5:8-101 and the statutory scheme as a whole, which it characterizes as requiring "something more than the presence of any food" so that the concession area creates "the ambience of an amusement park." (emphasis in original). It also maintains it clearly explained to appellant "prepacked food dispensed from a vending machine is not a food concession" under the statutory language.

## II.

The limited nature of our review of administrative agency action is well-settled. Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011). Indeed, we defer to administrative agencies in recognition of their "expertise and superior knowledge of a particular field," In re Herrmann, 192 N.J. 19, 28 (2007), and presume the validity of an "administrative agency's exercise of its statutorily delegated responsibilities," Lavezzi v. State, 219 N.J. 163, 171 (2014). For those reasons, we ordinarily do not "disturb an administrative agency's determinations or findings unless there is a clear showing . . . : (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." In re Virtua-W. Jersey Hosp. Voorhees for a Certificate

9

of Need, 194 N.J. 413, 422 (2008). "The burden of demonstrating . . . the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006).

Further, we note, significantly, that N.J.S.A. 5:8-79 and N.J.S.A. 5:8-102 authorize the Commission to interpret and implement N.J.S.A. 5:8-101. In such circumstances, we generally give deference "to the interpretation of statutory language by the agency charged with the expertise and responsibility to administer the scheme . . . 'unless the interpretation is "plainly unreasonable."'" Acoli v. N.J. State Parole Bd., 224 N.J. 213, 229-30 (2016) (quoting In re Election Law Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262 (2010)). "If there is any fair argument in support of the course taken [by the agency] or any reasonable ground for difference of opinion among intelligent and conscientious officials, the decision" should not be disturbed. Lisowski v. Borough of Avalon, 442 N.J. Super. 304, 330 (App. Div. 2015) (alteration in original) (quoting City of Newark v. Nat. Res. Council in Dep't. of Env'tl. Prot., 82 N.J. 530, 539 (1980)).

Our deference in this regard is not unbridled. Indeed, we are not bound by an agency's interpretation of a statute, or its determination of a strictly legal

issue. <u>Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n.</u>, 234 N.J. 150, 158 (2018). "[I]f an agency's statutory interpretation is contrary to the statutory language, or if the agency's interpretation undermines the Legislature's intent, no deference is required." <u>Reilly v. AAA Mid-Atl. Ins. Co. of N.J.</u>, 194 N.J. 474, 485 (2008).

In addition, "[a] state agency rendering a final agency decision must explain the specific reasons for its determination." <u>In re Orban/Square Props., LLC</u>, 461 N.J. Super. 57, 77 (App. Div. 2019). "[A] mere cataloging of evidence followed by an ultimate conclusion of liability, without a reasoned explanation based on specific findings of basic facts, does not satisfy the requirements of the adjudicatory process because it does not enable us to properly perform our review function." <u>Blackwell v. Dep't. of Corrs.</u>, 348 N.J. Super. 117, 122-23 (App. Div. 2002) (quoting <u>Lister v. J.B. Eurell Co.</u>, 234 N.J. Super. 64, 73 (App. Div. 1989)). Simply put, "'[t]he agency is "obliged . . . to tell us why"' it reached its result." <u>Blanchard v. N.J. Dep't. of Corrs.</u>, 461 N.J. Super. 231, 248 (App. Div. 2019) (alterations in original) (quoting <u>Balagun v. N.J. Dep't. of Corrs.</u>, 261 N.J. Super. 199, 203 (App. Div. 2003)).

We next address the relevant statutory language. The Commission is charged with administering and enforcing the Amusement Games Licensing

Law and all attendant regulations. N.J.S.A. 5:8-102. Consistent with that statutory regime, for appellant to operate an amusement game legally, it was required to obtain a license both from Cherry Hill, which it did, and the State. N.J.S.A. 5:8-101. Upon municipality approval, any application is then forwarded to the Commission for further review to ensure both the games and the operators follow relevant law. N.J.S.A. 5:8-102. If the Commission is satisfied the applicant complies with requirements of the statute and applicable regulations, it issues a license, which can only be provided in municipalities where voters have additionally agreed that such games may take place. N.J.S.A. 5:8-115.

N.J.S.A. 5:8-101, which specifically addresses the licensure requirement of owners and operators of amusement games, provides in pertinent part:

> It shall be lawful for the governing body of any municipality . . . to license the owner and operator of any amusement game or games . . . to be held and operated at a recognized amusement park . . . according to the customary understanding of said terms in the community, and provided that the same shall be held, operated and conducted pursuant to this act and such license and the license issued by the Legalized Games of Chance Control Commission, as hereinafter provided, and under such conditions and regulations for the supervision and conduct thereof as shall be prescribed by rules and regulations duly adopted from time to time by the commission, not inconsistent with the provisions of this act, and for any person or persons

to participate in and play such amusement games conducted under such licenses.

"Recognized amusement park" means a commercially operated permanent business, open to the public at least 31 consecutive days annually, designed and themed for the primary purpose of providing participatory amusements incorporating skill-based attractions, rides or water slides . . . , or electronic amusements, <u>and food and merchandise concessions in permanent structures</u>.

[Emphasis supplied].

Thus, to be a "[r]ecognized amusement park," appellant must have "food . . . concessions," and those food concessions must be "in permanent structures." N.J.S.A. 5:8-101. We note the Amusement Games Licensing Law defines neither term. Nothing in the statute, however, requires the food have any particular characteristics, such as being prepared on site. Further, as appellant notes, statutes defining food in other contexts generally take a broad approach when describing the term. <u>See, e.g.,</u> N.J.S.A. 2C:21-7.2(b) (defining food as "any food, food product or food preparation, whether raw or prepared for human consumption, and whether in a solid or liquid state . . ."); N.J.S.A. 24:4A-2 (defining food as "articles used for food or drink for humans and articles used for components of any such article"); N.J.S.A. 56:8-62 (defining food as "a food, food product, food ingredient, dietary supplement or beverage").

13

After a thorough review of the administrative record, we cannot discern the rationale underlying the Commission's position that pre-packaged food would not meet the requirements of N.J.S.A. 5:8-101, even if offered "in permanent structures." The Commission cites no case law supporting its position, nor has our independent research uncovered any. As noted, the Commission was required to provide "a reasoned explanation based on specific findings of basic facts." Blackwell, 348 N.J. Super. at 122-23 (quoting Lister, 234 N.J. Super. at 73). In the absence of any authority or explanation for its interpretation of food concessions as excluding pre-packaged food, we vacate the Commission's decision and remand for it to "explain the specific reasons for its determination." Orban, 461 N.J. Super. at 77.

Additionally, the Commission focuses its merits brief on why appellant's concessions, which it understands to be exclusively vending machines, are not permanent structures. Prior to the Commission's denial memorialized in its May 22, 2023 letter, appellant submitted correspondence in March 2023, describing the pre-packaged foods and bottled drinks it intended to sell from a counter. Indeed, appellant's letter specified the layout of its food area would be the same as that approved by the Commission in December 2022. Nevertheless, as evidenced by its position before us, the Commission appears to have understood

appellant sought to offer food only in vending machines. We cannot discern whether the Commission concluded the food concessions proposed by appellant in its March 2023 letter did not constitute permanent structures pursuant to N.J.S.A. 5:8-101, or if its decision was animated by its misunderstanding that appellant would offer food only through vending machines.[1] Under these circumstances, we find the most appropriate course of action is to remand this matter for the Commission to make additional factual findings and legal conclusions on two issues: first, whether the pre-packaged foods appellant intends to offer constitute food for purposes of N.J.S.A. 5:8-101, and second, whether appellant's proposed food concessions are permanent structures satisfying the statutory requirement.

---

[1] On this point, we would be remiss if we did not note the lack of clarity in the Commission's decision may have been due, in part, to appellant's differing positions as reflected in the administrative record. For example, as noted, initially it did not want to offer food concessions at all. Then, it sought to install a "soda machine, a pretzel warmer, cookie maker, and hot dog roller," which would be permanently attached to a counter. Upon being informed by the health department this would require certain plumbing which it was unwilling or unable to install, appellant withdrew that request and informed the Commission in a letter it intended to sell pre-packaged food and bottled drinks, with the layout "the same as previously presented" and all items "on the counter in plain view for purchase." Even before us, appellant stated the proposed food would be sold in vending machines in its merits brief, but also added a footnote in its reply brief indicating it proposed to have a "food counter in which to serve customers."

15

In sum, we vacate the Commission's May 22, 2023 denial of appellant's amusement games license because it failed to explain the basis for its conclusion the term food as used in the statute excludes all pre-packaged items and did not address whether the food concessions proposed by appellant constitute permanent structures. On remand, the Commission should consider whether appellant's proposal to serve pre-packaged food at a permanent food counter, as described in its March 2023 correspondence, or as otherwise proposed, constitutes "food . . . concessions in permanent structures" sufficient for it to be granted an amusement games license pursuant to N.J.S.A. 5:8-101. The Commission shall provide a complete explanation for any decision, supported by specific factual findings and legal conclusions, and may conduct additional fact-finding as appropriate. Nothing in our decision should be interpreted as expressing an opinion as to the outcome of appellant's application, or whether appellant's proposal would satisfy any additional requirements set forth by local or state health authorities.

Vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16

A-3312-22